Judge BAKER
delivered the judgment of the Court.[1]
A special court-martial composed of a military judge alone convicted Appellant, pursuant to his conditional pleas, of two specifications of wrongful use of controlled substances and one specification of possession of marijuana, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a (2000). Appellant was sentenced to a bad-conduct discharge, confinement for two months, and reduction to the grade of E-l. The convening authority approved the findings and sentence, and the United States Air Force Court of Criminal Appeals affirmed. United States v. Cowgill, No. ACM S31404, 2008 WL 5192354 (A.F.Ct.Crim.App. Dec. 10, 2008). We granted review on the following assigned issue:
WHETHER THE MILITARY JUDGE ABUSED HER DISCRETION IN DENYING THE DEFENSE MOTION TO SUPPRESS ALL EVIDENCE FROM APPELLANT’S HOME.
Whether the military judge abused her discretion depends on whether there was a substantial basis for the civilian magistrate to find probable cause. The answer hinges on two questions about which this Court is twice divided. First, did Detective (Det.) Gary Krause provide erroneous information contained within the search warrant affidavit in reckless disregard for the truth? Second, if so, was there nonetheless sufficient independent information contained within the affidavit to provide a substantial basis to find probable cause? For the reasons set forth below, a majority of this Court concludes that there was a substantial basis to find probable cause. Therefore, the military judge did not abuse her discretion, the evidence was properly admitted and the case is affirmed.
BACKGROUND
On January 5, 2007, Air Force Office of Special Investigations (OSI) Special Agent (SA) Adrianna Vorderbruggen contacted Det. Gary Krause, a member of the Tacoma Police Department, for assistance in obtaining a search warrant. SA Vorderbruggen told Det. Krause that an unnamed source had witnessed Appellant smoking marijuana three times during December 2006 and smelled marijuana in Appellant’s off-base home on various occasions during 2006. Additionally, she said that Appellant’s roommate tested positive on a urinalysis test. The two investigators talked for approximately fifteen to twenty minutes and had no follow-up conversations. Det. Krause then *390 verified the address and description of the house provided by the source.
That same day, Det. Krause prepared an affidavit, including this information, and presented it to a civilian magistrate to obtain a search warrant for drugs at Appellant’s off-base residence. Det. Krause did not contact OSI to review the content of the affidavit. Among other things, the affidavit Det. Krause originally submitted to the magistrate stated:
The last time the source smelled marijuana was on the 28th of December. The source smelled marijuana on other occasions spread out over the course of 2006. In accordance with Air Force guidelines, OSI obtained a urinalysis from one of the two named subjects which came back positive for the presence of marijuana.
When the magistrate asked for corroboration for the unnamed source’s statements, Det. Krause told him that the urinalysis test was done as a result of the source’s information. He did not verily this information with OSI. Det. Krause amended the affidavit by hand to read: “Based upon the source’s information + In [sic] accordance with Air Force guidelines, OSI obtained a urinalysis from one of the two named subjects which came back positive for the presence of marijuana.”
These statements were factually incorrect, but believed to be true by the detective at the time. The urinalysis test was actually conducted pursuant to a unit sweep in August 2006. Additionally, Det. Krause told the magistrate that it was unusual that the source was reporting through OSI and that he had no direct contact with the source. Det. Krause received and executed the warrant, finding approximately three grams of marijuana when searching Appellant’s home. Appellant moved to suppress the evidence, and, after losing the motion, he entered a conditional guilty plea for possession.
The military judge subsequently found that the magistrate:
issued a warrant for the Accused’s residence based, in part, on erroneous infor-mation_ [A] crucial factor in his decision to issue the warrant was that a urinalysis had been conducted with positive results for the marijuana metabolite based on information from this source. In addition, he was also told that the OSI was requesting the warrant based, in part, on the positive urinalysis result. It appears that this false information was important to the [sic] Judge Chushcoff in determining whether probable cause existed. If not provided this incorrect information, a finding may possibly have been that probable cause did not exist.
However, the military judge concluded there was no evidence that the detective “made these statements with reckless disregard for the truth.” Finally, the military judge concluded that “Despite the erroneous information mistakenly provided to the Judge, there still remained a substantial basis for determining the existence of probable cause.”
ANALYSIS
The Fourth Amendment requires that “no Warrants shall issue, but upon probable cause.” U.S. Const, amend. IV. A military judge’s decision to find probable cause existed to support a search authorization as well as to admit or exclude evidence is reviewed for an abuse of discretion. United States v. Bethea, 61 M.J. 184, 187 (C.A.A.F. 2005); United States v. Carter, 54 M.J. 414, 418 (C.A.A.F.2001). “An abuse of discretion occurs if the military judge’s findings of fact are clearly erroneous or if the decision is influenced by an erroneous view of the law.” United States v. Quintanilla, 63 M.J. 29, 35 (C.A.A.F.2006). “In reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party.” United States v. Reister, 44 M.J. 409, 413 (C.A.A.F.1996) (quotation marks omitted).
The military judge would not have abused her discretion when denying the motion to suppress if the magistrate had a “substantial basis” for determining that probable cause existed. United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F.2007) (citing Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Probable cause exists when there is sufficient information to provide the authorizing official “a reasonable belief that *391 the person, property, or evidence sought is located in the place or on the person to be searched.” Military Rule of Evidence (M.R.E.) 315(f)(2).
Appellant argues that absent the false information regarding the timing and predicate of the roommate’s urinalysis, the affidavit depended on the uncorroborated information of an unnamed source. Appellant acknowledges that Gates replaced the “veracity-knowledge” test from Aguilar v. Texas, 378 U.S. 108, 113-14, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and Spinelli v. United States, 393 U.S. 410, 415-16, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), with a more contextual “totality of the circumstances” approach. See Gates, 462 U.S. at 230, 103 S.Ct. 2317. However, Appellant correctly argues that Gates did not replace the need for the Government to show some concrete indicia of reliability before reliance is placed on a confidential informant. Absent such indicia, the affidavit was “facially deficient” and the conclusion regarding the source’s “reliability” conclusory.
The Government acknowledges that certain information provided by Det. Krause was erroneous. However, the Government argues that the confidential informant’s information was otherwise corroborated by the roommate’s urinalysis results, if not the date of and predicate for the test, and was otherwise relevant to a probable cause finding. In addition, while acknowledging that the Gates totality of the circumstances test still requires indicia that an informant is reliable, the Government finds that reliability in the granular and specific nature of the informant’s input.
I. Treatment of the Erroneous Information
As a threshold question, and in light of the erroneous information contained within the affidavit, this Court must determine what information should be reviewed to determine whether or not a substantial basis for finding probable cause was present. In reviewing probable cause determinations, this Court examines the information known to the magistrate at the time of his decision, and the manner in which the facts became known. Bethea, 61 M.J. at 187; Leedy, 65 M.J. at 214. However, in Gallo, this Court stated that “when there are misstatements or improperly obtained information, we sever those from the affidavit and examine the remainder to determine if probable cause still exists.” United States v. Gallo, 55 M.J. 418, 421 (C.A.A.F.2001); see also United States v. Mason, 59 M.J. 416, 422 (C.A.A.F. 2004).
Gallo ultimately derives from Franks v. Delaware, in which the U.S. Supreme Court stated:
[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant’s request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit’s false material set to one side, the affidavit’s remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.
438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Franks focused on whether the veracity of a warrant affidavit can be challenged by the defendant to quash the admission of seized evidence at trial. Id. at 155, 98 S.Ct. 2674. In that context, the Supreme Court expressed the view that the best way to balance the need to protect the probable cause requirement with society’s interest in discovering the truth was to delimit the circumstances where affidavits might be challenged. Id. at 165-71, 98 S.Ct. 2674. One explicit limitation was to allow review only in cases where there is evidence of deliberate misstatements or reckless disregard for the truth. “Allegations of negligence or innocent mistake are insufficient.” Id. at 171, 98 S.Ct. 2674. This rule and procedure was then adopted in M.R.E. *392 311(g)(2), which states that at a hearing reviewing whether probable cause existed for a search warrant “the defense has the burden of establishing by a preponderance of the evidence the allegation of knowing and intentional falsity or reckless disregard for the truth.” M.R.E. 311(g)(2).
The operative language of Franks varies in nuance from that of Gallo. While Gallo addresses “misstatements” or “improperly obtained information,” Franks focuses on “misstatements” made knowingly or “reckless disregard for the truth.” However, the underlying corrective principle is the same. “[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.” Franks, 438 U.S. at 171-72, 98 S.Ct. 2674. Moreover, to the extent there is a distinction between Gallo and Franks in what triggers the corrective principle, it is not essential here, for in the judgment of a majority of the Court, the affidavit was provided with reckless disregard for the truth.
Det. Krause’s affidavit states, “Based upon the source’s information [and i]n accordance with Air Force guidelines, OSI obtained a urinalysis from one of the two named subjects which came back positive for the presence of marijuana.” Both parties agree that the reason for and the implicit time period of the urinalysis test was incorrectly stated to the magistrate. The military judge found that the “erroneous information [was] mistakenly provided to the Judge.” She further found that the magistrate judge relied on these statements.
The military judge found no evidence that the factual errors were intentional. In fairness to the participants, it is also clear from the record that the detective and the OSI investigators could not recall the precise detail of their oral communication. Nonetheless, in our view it was reckless in the context of this case for the local detective not to validate the affidavit and its contents with the OSI before submitting it to the magistrate.
Some courts have stated that a reckless disregard for the truth occurs when the affi-ant “had obvious reasons to doubt the veracity of the allegations.” E.g., United States v. Jones, 208 F.3d 603, 607 (7th Cir.2000) (quotation marks and citations omitted). Other courts have adopted similar definitions as well as additional definitions to address different contexts. Thus, the United States Court of Appeals for the Third Circuit has adopted the language of the United States Court of Appeals for the Eighth Circuit in concluding that “omissions are made with reckless disregard if an officer withholds a fact in his ken that ‘any reasonable person would have known that this was the kind of thing the judge would wish to know.’ ” Wilson v. Russo, 212 F.3d 781, 788 (3d Cir.2000) (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir.1993)). Generally, regardless of specific definitions, reckless disregard requires something more than negligence. However, the distinction between mere negligence and reckless disregard can be opaque in this area of the law, requiring judges to discern the difference between that which is flagrant versus that which merely breaches a duty of care. The task is made no easier by the equally opaque manner in which courts have distinguished between intentional misstatements and a reckless disregard for the truth based on “serious doubts as to the truth.” Jones, 208 F.3d at 607.
The circumstances of this case do not fit neatly into an existing case law rubric involving either omissions or assertions. The detective did not withhold knowledge about the roommate’s urinalysis nor is there reason to believe he had serious doubts about what he said about the urinalysis. Indeed, the record reflects that he acted in good faith. The concern in this case is procedural. The question is whether the detective was merely negligent or reckless in not doing more to confirm the affidavit facts in this specific context.
To start, as noted by the detective himself, it was unusual and out of the ordinary for an affiant to rely on a confidential informant without first having direct contact with that source. Nor did the detective have information regarding the nature of the source, in- *393 eluding his military status. In addition, the detective told the magistrate that this informant was different than the ones he normally brought to court who typically would have been vetted using reliability buys. Thus on guard, the detective would have been better served to review the affidavit with the OSI before submitting it to the magistrate. However, when the magistrate specifically asked the detective about corroboration and the “hot urinalysis” it was imperative that the detective get the facts right. This was not only “the kind of thing the judge would wish to know”; he specifically wanted to know. At this point, if not before, it was reckless not to validate the facts with the OSI. Moreover, the record reveals no urgency or exigent circumstance that precluded the detective from doing so. Det. Krause’s lack of information about both the informant and the urinalysis test created obvious reasons for him to doubt the assertions he made in court, and demonstrate a reckless disregard for the warrant process.
Our determination that the information in question was provided recklessly is a fact-specific holding. In our view, the unusual circumstances surrounding the informant, the magistrate’s specific question about the predicate for the roommate’s urinalysis, and the obvious importance of the answer to the magistrate’s probable cause determination, moved this case from the negligent to the reckless. Having concluded that the information in question was provided in reckless disregard, consistent with Gallo and Franks we will sever that information from the affidavit and determine whether sufficient information remained in order for the magistrate to find probable cause.
II. Was There Nonetheless a Substantial Basis to Find Probable Cause?
Probable cause relies on a “commonsense decision whether, given all the circumstances ... there is a fair probability that contraband” will be found. Leedy, 65 M.J. at 213 (quote marks omitted) (quoting Gates, 462 U.S. at 236, 103 S.Ct. 2317).
The threshold for probable cause is subject to evolving case-law adjustments, but at its core it requires factual demonstration or reason to believe that a crime has or will be committed. As the term implies, probable cause deals with probabilities. It is not a “technical” standard, but rather is based on “factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.” Probable cause requires more than bare suspicion, but something less than a preponderance of the evidence.... The duty of the reviewing court is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.
Leedy, 65 M.J. at 213 (final ellipsis in original) (citations omitted).
On the one hand, Appellant argues that absent the erroneous information no probable cause existed because there was insufficient corroboration for “an unknown, unproven informant ... to justify searching someone’s home” and upholding the warrant will ratify inappropriate police reliance on such an informant. United States v. Wilhelm, 80 F.3d 116, 120 (4th Cir.1996). The magistrate in this case asked Det. Krause about the reliability of the informant and whether there was any corroborating evidence, demonstrating that the credibility of the informant was central to the probable cause determination by the magistrate. Appellant argues that if the informant was not reliable, then most of the information in the affidavit should be given no weight. Additionally, the Appellant contends that because some of the urinalysis information is false, one cannot rely on it at all in this ease. As a result, Appellant contends all that is left is a bare-bones affidavit.
On the other hand, Det. Krause’s affidavit included: statements about his conversation with SA Vorderbruggen, including his understanding that the source was “reliable”; a description of the statements from the unnamed source; and verification of Appellant’s address along with confirmation of the description of Appellant’s home as provided by *394 the source.[2] The source described witnessing Appellant along with his roommate smoke marijuana, the drug paraphernalia they used to do so, and the persistent smell of drugs in Appellant’s home. Additionally, Appellant’s roommate failed a drug test during the time that the source asserted the drug use was occurring.
Based on this information we agree with the military judge’s statement that the affidavit “could undoubtedly have been more detailed, with additional information about the reliable source and information unquestionably should have been confirmed between the OSI and Det Kraus [sic].” At the same time, based on the totality of the circumstances, we conclude that the military judge did not abuse her discretion in admitting the evidence seized from Appellant’s home.[3] While the drug test was not recent, it was not stale for the purposes of corroborating the informant’s statement with respect to the generalized use of marijuana over a six-month period. In addition, the detective’s verification of Appellant’s address confirmed the source’s description of the home and the source’s incriminating statements were specific as to time and granular as to deed.
CONCLUSION
The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. We heard oral argument in this case at Fort Campbell, Kentucky, as part of the Court's "Project Outreach.” This practice was developed as a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

. The affidavit also included reference to eight noise complaints filed against Appellant's address.

. In light of this conclusion we need not and do not address the applicability of the good faith exception, as discussed in Judge Erdmann's separate opinion.