UNITED STATES, Appellee

v.

Charles J. CLAYTON, Lieutenant Colonel
U.S. Army, Appellant

No. 08-0644

Crim. App. No. 20070145

United States Court of Appeals for the Armed Forces

Argued November 17, 2009

Decided March 17, 2010

EFFRON, C.J., delivered the opinion of the Court, in which BAKER and STUCKY, JJ., joined. RYAN, J., filed a dissenting opinion, in which ERDMANN, J., joined.

Counsel

For Appellant:  William E. Cassara, Esq. (argued); Captain Timothy W. Thomas (on brief); Major Grace M. Gallagher.

For Appellee:  Major Adam S. Kazin (argued); Colonel Norman F. J. Allen III and Lieutenant Colonel Martha L. Foss (on brief); Lieutenant Colonel Francis C. Kiley.

Military Judge:  Richard Gordon

THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Clayton, No. 08-0644/AR

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of a military judge sitting alone convicted Appellant, pursuant to his conditional pleas, of violating a lawful general order and possession of child pornography, in violation of Articles 92 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 934 (2006). The sentence adjudged by the court-martial included confinement for forty months and a dismissal. The convening authority approved a sentence that included confinement for thirty-six months and a dismissal, and provided the accused with seven days confinement credit. The convening authority also waived automatic forfeitures for a period of time with direction that the funds be paid to the wife of the accused. The United States Army Court of Criminal Appeals in a per curiam opinion amended the Specification of Charge I with respect to the location of the offense, affirmed the amended specification and the balance of the findings, and affirmed the sentence. United States v. Clayton, No. ARMY 20070145, 2008 CCA LEXIS 599, at *1 (A. Ct. Crim. App. May 9, 2008) (unpublished).

On Appellant's petition, we granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE SEIZED FROM APPELLANT'S QUARTERS.

For the reasons set forth below, we affirm.

2

## I.   BACKGROUND

The present appeal concerns a search conducted during a child pornography investigation.  Based upon information provided by law enforcement personnel from the United States Army Criminal Investigation Command (CID) agents, a military magistrate authorized a search of Appellant's quarters.  The information provided to the magistrate included details concerning Appellant's subscription to an Internet group formed to discuss, share, and distribute child pornography, his communication with the group, identifying data about his e-mail account, and other related information.  When the CID agents conducted a search of Appellant's quarters, they found a personal computer and digital media that contained thousands of images of child pornography, which formed the basis for the charges at issue in the present appeal.

Prior to trial, Appellant moved to suppress the seized evidence asserting a lack of probable cause for the search.  The military judge denied the motion.  Appellant entered a plea of guilty while preserving the right to appeal the military judge's ruling.

### A.   THE MILITARY JUDGE'S FINDINGS OF FACT

The following summarizes the military judge's findings of fact on the suppression motion, as well as information provided to the magistrate by CID Special Agent (SA) Yolanda McClain, who

was stationed in Kuwait and assigned investigative responsibilities for the case.  The events at issue occurred during the period in which Appellant served as a mobilized United States Army Reserve Officer in Kuwait.  The initial investigation was conducted by Senior Special Agent (SSA) Glen Watson, an investigator with the Investigations Division of the Office of Homeland Security Immigration and Customs Enforcement (ICE).  SSA Watson worked in the Child Exploitation Unit, where his duties included investigating child pornography and exploitation.  In the course of his duties, SSA Watson discovered an Internet child pornography website group on Google entitled, "Preteen-Bestiality-and-Anything-Taboo."  During the investigation, SSA Watson discovered a picture of child pornography that had been posted on the site.  He also found several requests for various types of child pornography and other requests for child exploitation.

SSA Watson contacted Google, informing them that a group operating on a Google site had posted child pornography.  SSA Watson also requested information associated with the group's moderator and "approved members."  In response, Google shut down the site.  Google also provided ICE with a list identifying the members of the "Preteen-Bestiality-and-Anything-Taboo" group by subscriber notification category and e-mail address.  The membership list of the "Preteen-Bestiality-and-Anything-Taboo"

4

group included an e-mail account bearing his name, "charlesjclayton@yahoo.com."

During the investigation, SSA Watson obtained information from Google and Yahoo that identified Appellant as the owner of the e-mail account bearing his name, "charlesjclayton@yahoo.com." In response to a subpoena, Yahoo provided Appellant's login name and an alternate e-mail address associated with Appellant's civilian employer.

SSA Watson used the information he gathered and an Internet protocol address to ascertain that Appellant's Yahoo account had been accessed from a computer owned and operated by the United States Army in Kuwait. Additionally, SSA Watson conducted an Internet search and found an article entitled "Roads traveled in Kuwait bring concern" by a "Lieutenant Colonel Charles CLAYTON."

SSA Watson was able to identify Appellant as a subscriber to the site who had asked the group's moderator to provide him with digest notification privileges. Specifically, Appellant requested automatic transmission to his Yahoo account by e-mail of up to twenty-five postings each day.

SSA Watson prepared a detailed report of his investigation, which was forwarded through military channels to SA McClain. SA McClain used this information to prepare a request for search authorization, including a supporting affidavit.

SA McClain summarized the results of SSA Watson's investigation in the affidavit. The affidavit described the activities of "an internet group on Google called 'Preteen-Bestiality-and-Anything-Taboo.'" According to the affidavit, members of the group used the website "to share child pornography pictures, videos, and exploitation information amongst themselves." The affidavit stated that "[m]embership logs . . . indicated that LTC CLAYTON requested a 'Digest' for the [g]roup, in which he would receive daily e-mails that would contain 25 of the postings to the [g]roup sent as a single e-mail to his account . . . ." With respect to Appellant, the affidavit stated that as a recipient of the digest, "it is possible that he [Appellant] was the recipient of child pornography directly to his Yahoo e-mail account . . . ."

The affidavit also stated that ICE recently had executed two search warrants, resulting in the arrests of two members of the group. One of the members, the moderator of the group, confessed to "possessing a large quantity of child pornography." The other member, the individual who "actually uploaded the child pornography to the [g]roup . . . also confessed and was arrested."

The affidavit stated that the government had furnished Appellant with a laptop computer, providing the model and serial number. SA McClain requested permission to search for media

files concerning child pornography on the laptop, in Appellant's quarters, and in Appellant's workspace.

On April 20, 2006, SA McClain met with the local military magistrate and briefed him on the status of the investigation. SA McClain provided the magistrate with the affidavit, the search authorization request, and the ICE Report. SA McClain and the magistrate were aware that Appellant lived in a single-person room in Building 507, which had wireless Internet service capability. The material provided by SA McClain to the magistrate did not indicate how often Appellant accessed the group site, nor did it indicate that he accessed the site from his quarters or that he owned a personal computer.

Following the interview with SA McClain, the magistrate reviewed the evidence and various sources of law. Later in the afternoon, he approved SA McClain's request to search Appellant's quarters.

B. THE MILITARY JUDGE'S CONCLUSIONS OF LAW

At trial, the military judge held that the magistrate had a substantial basis for concluding that probable cause existed to conduct the search, citing Illinois v. Gates, 462 U.S. 213 (1983). In reaching this conclusion, the military judge gave substantial deference to the magistrate's finding that probable cause existed to authorize the search, citing United States v. Maxwell, 45 M.J. 423 (C.A.A.F. 1996).

7

The military judge stated that the evidence, principally from SSA Watson's ICE Report and SA McClain's affidavit, established a fair probability that child pornography would be found in Appellant's personal quarters and media sources. The military judge noted that the information was provided by an experienced federal investigator from the Department of Homeland Security who specialized in investigating child pornography and child predators.

The military judge also concluded, in the alternative, that the evidence was admissible under the good faith exception to the exclusionary rule. See Military Rule of Evidence (M.R.E.) 311(b)(3)(C); United States v. Leon, 468 U.S. 897 (1984).

## II. REVIEW OF PROBABLE CAUSE DETERMINATIONS

We review a military judge's denial of a motion to suppress for an abuse of discretion. United States v. Leedy, 65 M.J. 208, 212 (C.A.A.F. 2007). An abuse of discretion occurs when we determine that the military judge's findings of fact are clearly erroneous or that he misapprehended the law. Id. at 213. In addressing the granted issue, we consider whether the military judge abused his discretion when he ruled as a matter of law that there was a substantial basis for finding probable cause existed under M.R.E. 315(f)(2). See id. at 212 (citing United States v. Rader, 65 M.J. 30, 32 (C.A.A.F. 2007)). "[W]e review

8

the legal question of sufficiency for finding probable cause de novo using a totality of the circumstance test." Id. (citing United States v. Reister, 44 M.J. 409 (C.A.A.F. 1996)).

M.R.E. 315(f)(2) defines probable cause as "a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." In United States v. Macomber, 67 M.J. 214, 218 (C.A.A.F. 2009), we recently summarized the framework for reviewing probable cause determinations under M.R.E. 315.

The analysis focused on four key principles. First, determinations of probable cause made by a neutral and detached magistrate are entitled to substantial deference. Id. (quoting United States v. Carter, 54 M.J. 414, 419 (C.A.A.F. 2001)). Second, resolution of doubtful or marginal cases should be largely determined by the preference for warrants, and "'[c]lose calls will be resolved in favor of sustaining the magistrate's decision.'" Id. (quoting United States v. Monroe, 52 M.J. 326, 331 (C.A.A.F. 2000)) (alteration in original). Third, "courts should not invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than a commonsense, manner." Id. (quoting Gates, 462 U.S. at 236) (alteration in original). Fourth, the evidence must be considered in the light most favorable to the prevailing party. Reister, 44 M.J. at 413.

We also have observed that "probable cause determinations are inherently contextual, dependent upon the specific circumstances presented as well as on the evidence itself." Leedy, 65 M.J. at 213. In Leedy, we emphasized that "probable cause is founded not on the determinative features of any particular piece of evidence provided an issuing magistrate . . . but rather upon the overall effect or weight of all factors . . . ." Id.

In a particular case, the contextual circumstances may involve the timing of the determination and the nexus between the alleged criminal activity and the place searched. The question of timing focuses on the information presented to the search authority, as well as information known by the search authority, at the time the decision to search was made. See M.R.E. 315(f)(2); United States v. Cunningham, 11 M.J. 242, 243 (C.M.A. 1981). The question of nexus focuses on whether there was a "fair probability" that contraband or evidence of a crime will be found in a particular place. Leedy, 65 M.J. at 213 (quoting Gates, 462 U.S. at 238) (quotation marks omitted). The nexus between the items to be seized and the place to be searched need not be based on direct observation but can be inferred from the facts and circumstances of a particular case. See Unites States v. Lopez, 35 M.J. 35, 38-39 (C.M.A. 1992). Determinative factors include the type of crime, the nature of

the items sought, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would likely hide the property.  Id.; see United States v. Gallo, 55 M.J. 418, 422 (C.A.A.F. 2001).


## III.  DISCUSSION

### A.  THE MAGISTATE'S PROBABLE CAUSE DETERMINATION

A number of courts have observed that a person's voluntary participation in a website group that had as its purpose the sharing of child pornography supported a probable cause determination that child pornography would be found on the person's computer.  See United States v. Gourde, 440 F.3d 1065, 1072-73 (9th Cir. 2006) (en banc); United States v. Martin, 426 F.3d 68, 74-75 (2d Cir. 2005); United States v. Froman, 355 F.3d 882, 890-91 (5th Cir. 2004); United States v. Hutto, No. 02-5210, 84 F. App'x 6, 8 (10th Cir. 2003).  These cases reflect a practical, commonsense understanding of the relationship between the active steps that a person might take in obtaining child pornography from a website and retaining it for an extended period of time on that person's computer.

In the present case, the information provided to the magistrate identified Appellant as a member of a website group, "Preteen-Bestiality-and-Anything-Taboo."  The group used the website to share child pornography and exploitation information.

11

The moderator of the website group and the media manager had been arrested and had confessed to possession and distribution of child pornography. Appellant voluntarily joined the group and specifically requested digest notification, which enabled him to receive up to twenty-five postings sent in a single e-mail automatically each day from the group to the e-mail account bearing his name, "charlesjclayton@yahoo.com." The e-mail account bearing his name had been accessed by a government computer in Kuwait. Appellant, who was stationed in Kuwait, had been provided with a laptop computer by the Army.

In short, the magistrate had information indicating that Appellant was a member of a group that shared Internet child pornography. The information also indicated that Appellant had requested e-mail transmissions from the group, that Appellant used an e-mail account bearing his name to access the group, and that the same e-mail address had been accessed from Kuwait. In addition, the information indicated that Appellant possessed a laptop computer in Kuwait. In view of the ease with which laptop computers are transported from work to home and the ease with which computer media may be replicated on portable devices, the information provided to the magistrate was sufficient to support a practical, commonsense decision by the magistrate that there was a fair probability that contraband would be located in Appellant's quarters.

Appellant contends that the information before the magistrate was not sufficient to establish probable cause because no evidence showed that he posted messages to the Google site, participated in discussions, or uploaded or downloaded child pornography.  Appellant also notes that the evidence before the magistrate did not indicate how long he belonged to the group, how often he accessed the website, or whether he received the digests he requested.  He further notes that SA McClain never followed up on a suggestion from SSA Watson that she review his e-mail accounts to ascertain whether they contained such information.

The foregoing matters all involve actions that could have been taken to enhance the law enforcement investigation, as well as questions appropriately addressed to the factfinder at the court-martial in regard to whether the prosecution, at trial, could meet the high standard of proof beyond a reasonable doubt. The magistrate, however, was not required to resolve these matters for purposes of making a probable cause determination with respect to a search authorization.  The information presented to the magistrate regarding the activities of a voluntary member of the "Preteen-Bestiality-and-Anything-Taboo" web group was sufficient to support a search of his quarters.

    B.  IMPACT OF ERRONEOUS INFORMATION IN AN AFFIDAVIT

    Appellant also contends that the information provided to

the magistrate was tainted because SA McClain erroneously

informed the magistrate that child pornography had been located

on Appellant's government computer.  Applying the corrective

principle identified in United States v. Cowgill, after setting

aside the erroneous information in an affidavit, "'there remains

sufficient content in the warrant affidavit to support a finding

of probable cause . . . .'"  ___ M.J. ___ (9) (C.A.A.F. 2010)

(quoting Franks v. Delaware, 438 U.S. 154, 171-72 (1978)).

    In testimony before the military judge during the

suppression hearing, SA McClain acknowledged that she had been

in error.  She meant to say that the suspect was within the

command, not that they had located child pornography on

Appellant's computer.  SA McClain further testified that she

addressed this misstatement during her meeting with the

magistrate.

    The military judge noted this misstatement in his findings

of fact:

        Agent McClain stated in her affidavit that, "The
        Camp Arifjan CID Office is currently conducting
        the discovery of apparent child pornography
        located within one of the [Government's] . . .
        computers and the suspected login user is LTC
        Charles J. Clayton . . . ."  This was not
        correct.  No apparent child pornography had been
        located within a [Government] . . . computer
        relating to LTC Clayton.  Agent McClain later

14

> testified that she meant to say in the affidavit
> that a military computer in Kuwait had accessed a
> Yahoo account through a US Army server in Kuwait
> and that LTC Clayton was a suspect because of his
> membership in the [g]roup and his use of this
> Yahoo account.

Although the military judge did not address expressly in his findings of fact whether, or to what extent, the magistrate considered SA McClain's explanation, the military judge set forth SA McClain's experience and stated:  "She appeared to be a th[o]rough investigator who did things based on her CID training and not out of malice or intent to take down a senior officer." In his conclusions of law, the military judge specifically stated that "Agent McClain did not act with any 'reckless' disregard for the truth."  With respect to the magistrate's reliance on the affidavit, the military judge concluded that the magistrate "did not in any sense abandon his judicial role, nor was he a 'rubber stamp' for the government."  The military judge added that "[t]he affidavit was based on information provided by an experienced federal investigator, and it was not facially deficient."  The military judge was in the best position to observe the person presenting information that supplemented the affidavit, assess credibility, and determine whether the misstatement constituted a reckless disregard for the truth. See United States v. Rogers, 67 M.J. 162, 166 (C.A.A.F. 2009) (relying on the military judge's assessment of information

15

provided by a law enforcement agent in addition to the information in the agent's affidavit).  Moreover, the military judge's findings of fact and conclusions of law demonstrate that the erroneous statement did not constitute a significant element of the probable cause equation.  If we sever the erroneous statement from the affidavit, the remaining information before the magistrate, as set forth supra in Part I.A., was more than adequate to demonstrate that the magistrate had a substantial basis for finding probable cause to search Appellant's quarters. In view of our conclusion in that regard, we need not discuss the military judge's alternative holding under the good faith exception.


IV.  CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.

United States v. Clayton, No. 08-0644/AR

RYAN, J., with whom ERDMANN, J., joins (dissenting):

I cannot agree with the continued dilution of the requirement that there be an actual, as opposed to an intuitive or a hypothetical, nexus between the evidence sought and the location to be searched. Compare United States v. Higgins, 557 F.3d 381, 390 (6th Cir. 2009) (finding no probable cause to search suspect's home because affidavit only stated that informant had purchased contraband from suspect and did not assert informant had ever been in suspect's home), and United States v. Frazier, 423 F.3d 526, 533 (6th Cir. 2005) (finding no probable cause because "the defendant's status as a drug dealer, standing alone, [does not] give[] rise to a fair probability that drugs will be found in his home"), with United States v. Clayton, __ M.J. __ (12-13, 16) (C.A.A.F. 2010) (finding probable cause to search suspect's residence despite no evidence linking child pornography to that location), United States v. Macomber, 67 M.J. 214, 219-20 (C.A.A.F. 2009) (same), and United States v. Gallo, 55 M.J. 418, 422 (C.A.A.F. 2001) (same). Absent such dilution, the magistrate's finding of probable cause is not sustainable.

## I.  Probable Cause

"Probable cause to search exists when there is a reasonable belief that the . . . evidence sought is located in the place . . . to be searched." Military Rule of Evidence (M.R.E.)

315(f)(2) (emphasis added); accord Illinois v. Gates, 462 U.S. 213, 238 (1983) (defining probable cause as "a fair probability that contraband or evidence of a crime will be found in a particular place" (emphasis added)).  This definition contemplates some nexus between the contraband or evidence sought and the place the government wants to search.  See United States v. Hall, 50 M.J. 247, 250 (C.A.A.F. 1999).

In this case, a warrant was issued to search Appellant's barracks room for child pornography.  In finding what it asserts to be the required nexus here, the majority relies on the following evidence:

1.  That Appellant was a member of a Google Internet group called "Preteen-Bestiality-and-Anything-Taboo."  __ M.J. at __ (11-12).

2.  That Appellant had specifically requested membership in the group and his membership level provided him with a single daily e-mail containing up to twenty-five new postings to the group.  Id. at __ (12).

3.  That both child pornography and information regarding child exploitation had been uploaded to the group in the past.  Id. at __ (11).

4.  That the moderator and media manager of the group had been arrested and confessed to possessing child pornography.  Id. at __ (12).

2

    5.  That the e-mail account through which Appellant received messages from the Google group "had been accessed by a government computer in Kuwait,"[1] the country in which Appellant was stationed.  Id.

    6.  That Appellant's government computer was a laptop.  Id. The majority also notes that wireless Internet access was available in Appellant's dormitory, though it is unclear whether that factors into its probable cause analysis.[2]  Compare id. at

---

[1] At this point the Government only knew that the account had been accessed by way of a U.S. Army server in Kuwait.  It had no information regarding which computer had accessed the account. The affidavit ambiguously asserted that "[t]he charlesjclayton@yahoo.com account was accessed via Internet protocol (IP) address 143.81.248.47 which was traced to a computer that was owned and operated by the U. S. Army in Kuwait."

[2] The affidavit presented to the magistrate contained no information regarding wireless Internet access.  And while both the magistrate and the affiant were independently aware that wireless access was available in the building, it is unclear whether that information was discussed or considered during the search authorization process -- the magistrate appears to have known wireless Internet was available not because of information presented in the course of reviewing the search authorization request, but because he had been involved in soliciting the contract for its installation and knew someone who used it.  It is therefore at least an open question whether it was proper for him to consider this information in granting the search authorization.  See United States v. Leedy, 65 M.J. 208, 214 (C.A.A.F. 2007) (stating that our probable cause analysis focuses on "the evidence as set out in the four corners of the requesting affidavit . . . illuminated by factors such as the veracity, reliability, and basis of knowledge of the individual presenting the evidence") (emphasis added) (citations and quotation marks omitted); see also Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 565 n.8 (1971) ("[A]n otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when

__ (7) (noting both affiant and magistrate were aware wireless Internet access was available), with id. at __ (11-13) (discussing magistrate's probable cause determination without noting availability of wireless Internet).

Nothing in these facts provided the magistrate with the necessary nexus between the place to be searched -- Appellant's dorm room -- and the evidence sought. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." Zurcher v. Stanford Daily, 436 U.S. 547, 556 (1978) (abrogated by statute on other grounds). But all these facts show is that there was ample probable cause to believe Appellant had access to child pornography. There is nothing to raise a reasonable belief that such pornography would be in his quarters in Kuwait.

Though wireless Internet access was generally available in Appellant's building, the magistrate was not presented with any evidence that Appellant signed up for such a connection or that the wireless Internet connection was routed through the Army server from which Appellant's charlesjclayton@yahoo.com e-mail address had been accessed. Cf. Macomber, 67 M.J. at 221 (Ryan,

he sought the warrant but not disclosed to the issuing magistrate.").

4

J., dissenting) (finding no probable cause in part because affidavit contained no evidence accused actually owned a computer or had Internet access in his room). Appellant could have checked his personal e-mail at work, or at other locations where deployed servicemembers access the Internet. Likewise, the fact that his government-issued computer was a laptop did not make it any more likely that he was storing child pornography in his quarters, as opposed to somewhere else. Cf. United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998) (finding no probable cause to search suspect's home because contraband videotapes were delivered to a post office box and "[his] home . . . was but one of an otherwise unlimited possible sites for viewing or storage . . . . [and t]he . . . affidavit provided no basis to either limit the possible sites or suggest that [the suspect]'s home was more likely than the otherwise endless possibilities"). The portability of both laptops and the digital movies and images the Government sought here makes any "commonsense" link to Appellant's room exceedingly tenuous.

I dissented in Macomber because I did not believe the evidence there provided a legitimate nexus to the appellant's dormitory room. 67 M.J. at 221-23 (Ryan, J., dissenting). But the magistrate in that case at least had in front of him a generic "pedophile profile," which indicated that persons with a sexual interest in children often store child pornography in

5

their homes (and especially in their bedrooms).  Here, the magistrate was not presented with even this constitutionally minimally relevant evidence.[3]

Further, the magistrate in Macomber at least knew that the suspect had used his dormitory as the return address when ordering child pornography through the mail.  67 M.J. at 219. In this case, the only residence tied to child pornography was Appellant's residence in Georgia, the address associated with the charlesjclayton@yahoo.com account.

The facts here do not approach even the low bar this Court set in Gallo.  In that case, child pornography had been found on the appellant's work computer and there was evidence that those files had been accessed from or copied to a floppy disk, leading the Court to reason that the floppy disk would likely be found at the suspect's home.  55 M.J. at 421-22; id. at 423 (Sullivan, J., concurring).  In this case there was no evidence that Appellant had transferred pornography to media that he might have taken to his quarters, and no computer under Appellant's control had yet been found to contain child pornography.

The Court today appears to champion the idea that there is something de minimis about the Fourth Amendment's requirements when the thing sought by a search authorization or warrant is

---

[3] I doubt anyone would be satisfied that an affidavit resting on a generic "gang member" profile, for example, could fulfill the requirements of the Fourth Amendment.

child pornography.  It is now effectively the case that signing up for a website related to that topic -- expressing an interest in it, from any location at all -- provides sufficient cause to search one's home or living quarters.  __ M.J. at __ (12-13).  This reasoning requires three logical inferences:  First, if the suspect is a member of an Internet group related to child pornography, he has access to a computer.  Second, if he has access to a computer, it is in his home or living quarters.  Third, membership in the group equates to downloading and possessing child pornography.  The first inference makes sense, but the other two do not -- at least on the evidence presented to this magistrate.

People access the Internet at work, Internet cafés, public libraries, and myriad other places.  The majority's logic is not and cannot be limited to one's home.  Once we have held that an expressed interest in child pornography probably means you are viewing and secreting it somewhere, it seems equally sustainable to hold that the government is free to search for that pornography anywhere.  This comes dangerously close to reviving the writs of assistance that were the impetus for enacting the Fourth Amendment in the first place.  See generally Boyd v. United States, 116 U.S. 616, 625-26 (1886) (discussing the history of unreasonable searches and seizures prior to

independence and how they influenced the Framers' view of the Fourth Amendment).

It is true that we are not the first court to treat child pornography this way. Clayton, __ M.J. at __ (11) (citing United States v. Gourde, 440 F.3d 1065 (9th Cir. 2006); United States v. Martin, 426 F.3d 68 (2d Cir. 2005); United States v. Froman, 355 F.3d 882 (5th Cir. 2004); United States v. Hutto, 84 F. App'x 6 (10th Cir. 2003)). But that others have joined our adventures does not make the course any less a folly. The better route is to continue to require, consistent with both M.R.E. 315(f)(2) and Gates, 462 U.S. at 238, some nexus between the items sought and the place the government wants to search. Accord Higgins, 557 F.3d at 390; Frazier, 423 F.3d at 533.

## II. The Good Faith Exception

Because I do not believe the magistrate had a substantial basis for finding probable cause here, I must address the exception to the exclusionary rule for good faith reliance on a warrant, first announced by the Supreme Court in United States v. Leon, 468 U.S. 897, 922 (1984), and codified for the military justice system in M.R.E. 311(b)(3). Under this rule:

> Evidence that was obtained as a result of an unlawful search or seizure may be used if:
>
> > (A) The search or seizure resulted from an authorization to search, seize or apprehend issued by an individual competent to issue the authorization under Mil. R. Evid. 315(d) or from

8

> a search warrant or arrest warrant issued by
> competent civilian authority;
> (B)  The individual issuing the authorization or
> warrant had a substantial basis for determining
> the existence of probable cause; and
> (C)  The officials seeking and executing the
> authorization or warrant reasonably and with good
> faith relied on the issuance of the authorization
> or warrant.  Good faith shall be determined on an
> objective standard.

I do not believe this exception saves the search here because reliance on a warrant is not in good faith "[w]here the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth."  United States v. Carter, 54 M.J. 414, 420 (C.A.A.F. 2001) (citation and quotation marks omitted).  If government agents falsely or recklessly inform a magistrate, courts cannot allow those same agents to paper over their untruths with an exception meant to protect generally blameless actors.

At least one other court has held that:

[T]he necessity of a nexus between the suspected criminal activity and the particular place to be searched is so well established that in the absence of such a connection, "the affidavit and resulting warrant are so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."

Poolaw v. Marcantel, 565 F.3d 721, 734 (10th Cir. 2009) (quoting United States v. Gonzales, 399 F.3d 1225, 1231 (10th Cir. 2005)).  This is an argument that we have not yet addressed, but it is apparent even under our already-existing case law that the

good faith exception does not save the search authorization here.

The affiant in this case knew that <u>no</u> pornography had been discovered on <u>any</u> Army computer, let alone Appellant's computer. Despite this fact, she included in her affidavit a statement unambiguously linking Appellant to already-discovered pornography: "The Camp Arifjan CID Office is currently conducting the discovery of apparent child pornography located within one of the Coalition Forces Land Component Command (CFLCC), CAKU, computers and the suspected login user is LTC Charles J. CLAYTON." Any reasonable law enforcement agent would know that a linkage between a suspect and contraband would be extremely important to a magistrate's decision to issue a search authorization. To indicate such a linkage without explaining to the magistrate precisely what she claims to have meant -- that the Criminal Investigation Command (CID) suspected "a person" within CFLCC -- shows a reckless disregard for the truth of the information before the magistrate,[4] and CID therefore could not rely on the search authorization in good faith. <u>Cf.</u> <u>Wilson v. Russo</u>, 212 F.3d 781, 788 (3d Cir. 2000) ("[O]missions are made with reckless disregard if an officer withholds a fact in his

---

[4] This conclusion might be different if the false statement had been made orally, where a slip of the tongue was possible, and not in a written affidavit where the affiant could review the language to make sure it said precisely what she wanted it to say.

ken that 'any reasonable person would have known . . . was the kind of thing the judge would wish to know.'" (quoting United States v. Jacobs, 986 F.2d 1231, 1235 (8th Cir. 1993))); United States v. Cowgill, __ M.J. __ (12-13) (C.A.A.F. 2010) (plurality opinion) (determining affiant acted with reckless disregard for the truth where, when asked a question by the magistrate that affiant did not know answer to, affiant gave magistrate what he assumed to be correct answer (it was incorrect) without either telling magistrate he was not sure or checking to make sure that the answer was, in fact, correct).

## III.  Conclusion

I would reverse the United States Army Court of Criminal Appeals.  I respectfully dissent.