Judge STUCKY,
dissenting,
Crucial to the sensible legal treatment of modera technology is an understanding of its functioning and the commonsense application of well-established doctrine in the face of novel situations. In my view, the majority fails in both of these regards, and I therefore respectfully dissent,
Before engaging the technology at issue in this case, the majority omits mention of material precedent from this Court in its presentation of the law of probable cause.
“Probable cause exists where ‘there is a fair probability that contraband or evidence of a ciime will be found in a partícular’ place.’ ” United States v. Grubbs, 547 U.S. 90, 95, 126 S.Ct. 1494, 164 L.Ed.2d 195 (2006) (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). It “is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.” Gates, 462 U.S. at 232, 103 S.Ct. 2317. Pertinently, we have stated that probable cause requires
more than bare suspicion, but something less than a preponderance of the evidence. Thus, the evidence presented ... need not be sufficient to support a conviction, nor even to demonstrate that an investigator’s belief is more likely true than false ...; there is no specific probability required, nor must the evidence lead one to believe that it more probable than not that contraband will be present.
United States v. Leedy, 65 M.J. 208, 213 (C.A.A.F. 2007) (citations omitted). Such conclusions must also be “founded not on the determinative features of any particular piece of evidence ... but rather upon the overall effect or weight of all factors,” which is “dependent upon the specific circumstances presented as well as on the evidence itself.” Id.
In addition to incompletely presenting the law of probable cause, the majority also misapplies the standai’d of review that we utilize with regard to these issues. When a military judge’s denial of a motion to suppress comes before us, “[w]e review the legal question of sufficiency for finding probable cause de novo using a totality of the circumstances test.” Leedy, 65 M.J. at 212. In conducting this review, we apply the standard that the military judge would use in reviewing the magistrate’s probable cause determination, That is, we “start by examining whether the magistrate had a ‘substantial basis’ for determining that probable cause existed,” id. (quoting Gates, 462 U.S. at 238, 103 S.Ct. 2317), because “[i]t follows that where a magistrate had a substantial basis to And probable cause,” a military judge would be correct in denying a motion to suppress evidence reaped from any resulting search or seizure. Id. The Supreme Court has held that “[t]he duty of a reviewing court is simply to ensure that the magistrate had a ‘substantial basis for ... concluding]’ that probable cause existed.” Gates, 462 U.S. at 238-39, 103 S.Ct. 2317 (alteration in original) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960)). Moreover, it has found that “[rjeasonable minds frequently may differ on the question [of] whether a particular affidavit establishes probable cause, and we have thus concluded that the preference for warrants is most appropriately effectuated by according great deference to a magistrate’s determination.” United States v. Leon, 468 U.S. 897, 914, 104 S.Ct. 3406, 82 L.Ed.2d 677 (1984) (internal quotation marks omitted) (citations omitted); see also Gates, 462 U.S. at 236, 103 S.Ct. 2317 (“A magistrate’s ‘determination of probable cause should be paid great deference by reviewing courts.’ ” (quoting Spinelli v. United States, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969))). Consistent with this precedent, we have held that “determinations of probable cause made by a neutral and detached magistrate are entitled to substantial deference.” United States v. Clayton, 68 M.J. 419, 423 (C.A.A.F. 2010); accord United *110 States v. Hoffmann, 75 M.J. 120, 123 (C.A.A.F. 2016) (“Searches conducted after obtaining a warrant or authorization based on probable cause are presumptively reasonable.”)-
Before the military magistrate who granted the initial search authorization were the following: a sworn statement from a soldier (CPL RAO) attesting to Appellant’s actions and those of others; an affidavit from SA Sandefur in support of a search and seizure authorization; and information orally provided to the magistrate by SA Sandefur during an in-person meeting. The first and third sources of information are given short shrift in the majority opinion, and therefore require further elaboration.
The sworn statement from CPL RAO attested to an incident during which, while using the latrine, he looked up and “noticed a cellular phone screen being pulled from [his] stall to the stall to [his] left.” Upon returning to his tent, CPL RAO stated that he confided in his colleague (SPC S) what had happened, and that, in turn, SPC S “confided in [CPL RAO] that the same situation had happened to him a week prior.” SPC S then went to the latrine in an attempt to catch the subject in the act, and returned approximately thirty minutes later, telling CPL RAO that “the cellular phone appeared over his stall as well.” CPL RAO then recounted returning to the latrine with SPC S and sitting “in the stall to see if [he] could catch the subject [him]self.” After waiting five minutes without glimpsing the cellular phone, CPL RAO exited the latrine stall and sought out superiors. Meanwhile, SPC S waited at the latrine to see who came out of the stall from which the cellular phone had been outstretched. CPL RAO informed four superiors of the situation and returned to the latrine with three of them. When they arrived, Appellant was standing outside of the latrine with two superiors and SPC S. The two superiors already there were looking through Appellant’s cellular phone for inappropriate recordings, of which they found none. The grouping then dispersed to discuss the situation and inform others of what had transpired.
In turn, during his in-person conversation with the military magistrate, SA Sandefur informed her not just that soldiers tend to back up media files recorded using their cellular phones by uploading them to their laptops, as the majority accepts, but that they do this specifically with recordings made “on missions or on the [forward operating base],” such as that where Appellant was stationed. This insight came from a special agent with fifteen years of experience, over the course of which he was deployed multiple times. It is clear from the search authorization, and SA Sandefur’s testimony, that law enforcement knew the specific type of cellular phone that Appellant possessed—a “White Samsung Galaxy cellular Telephone,”—and informed the military magistrate of this. These two sources, similarly make it apparent that law enforcement knew that Appellant possessed a laptop computer, the likely location of both the computer and cellular phone—Appellant’s “Bunk,” “tent 224,”—and so informed the military magistrate. The majority attempts to cast information on the laptop’s location as “suspect” by criticizing its attribution to “an unknown source.” United States v. Nieto, 76 M.J. 101, 107-08 (C.A.A.F. 2017). But an unnamed individual seeing the computer on Appellant’s bunk next to his phone in the cramped living conditions of a forward operating base (FOB), and SA Sandefur being unable to recall exactly from whom his fellow agents had procured this information when questioned months after he worked on the case, do little to undermine the fact that law enforcement had a clear idea of where Appellant’s laptop was and passed this insight on to the military magistrate. Finally, the majority’s statement that SA Sandefur “did not know whether the files on the cell phone were transferable to the laptop” is misleading. Id. at 104. Based on a sworn statement attesting to Appellant’s repeated suspicious conduct, he was suspected of making inappropriate recordings with his cellular phone. And SA Sandefur clearly stated that authorities suspected that there “would have been at least photographs on [Appellant’s] phone ... in a file format.” It is widely understood that such files are transferable between devices, *111 and between cellular phones and laptop computers in particular.
Applying the proper probable cause analysis to the full facts presented to the military magistrate shows that she had a substantial basis for her positive finding, notwithstanding the substantial deference she is to be accorded—deference that the majority notes must be given but fails to confer. SA Sande-fur communicated to the military magistrate the specific type of cellular phone owned by Appellant and the likely location where it and Appellant’s laptop would be found. He also relayed that, based on his substantial professional experience, soldiers stationed at FOBs tend to upload media files taken with their cellular phones to other devices with greater storage capacity. While the experienced counsel of law enforcement professionals is of great value to magistrates in probable cause determinations, Leedy, 65 M.J. at 215-16; accord United States v. Gallo, 55 M.J. 418, 422 (C.A.A.F. 2001) (“The courts have allowed a gap in the nexus to be filled in based on the affiant’s experience.”), the majority is correct in noting that this ‘“alone without specific nexus to the person concerned’” is not enough to form a substantial basis. Nieto, 76 M.J. at 106 (quoting United States v. Macomber, 67 M.J. 214, 220 (C.A.A.F. 2009)). But it is incorrect in solely analyzing this source of information in assessing the magistrate’s decision.
For his part, CPL RAO swore to a first-person account of actions taken by Appellant indicating that he was making inappropriate recordings with his cellular phone, others observing these actions as well, and the fact that Appellant consistently engaged in such practices over a period of time. Moreover, it was recounted that superiors conducted an impromptu search of Appellant’s cellular phone for offensive material and found none, bolstering the suspicion that, given his consistent conduct, Appellant was transferring his media files to another device.
All told, the magistrate had before her a sworn statement as to Appellant’s consistent suspicious behavior and an affidavit from a very experienced law enforcement officer informing her of the common practices of individuals who fit Appellant’s profile. A nexus between Appellant, the crime he was suspected of, and his laptop computer is quite apparent.
But even if the nexus was not so readily discernible, military magistrates have the authority “to draw such reasonable inferences as [they] will from the material supplied to [them] by applicants for a warrant.” Gates, 462 U.S. at 240, 103 S.Ct. 2317; accord Clayton, 68 M.J. at 424 (holding that military magistrates have the authority to make “normal inferences as to where a criminal would likely hide the property”). “Thus, while the law requires [magistrates] to be neutral, the law does not require [them] to pretend they are babes in the woods. In evaluating search warrant applications, [magistrates] may consider what ‘is or should be common knowledge.’ ” United States v. Reichling, 781 F.3d 883, 887 (7th Cir. 2015) (quoting United States v. Seiver, 692 F.3d 774, 778 (7th Cir. 2012)). Indeed, judicial reliance on common knowledge is a timeworn legal precept. E.g., Alberty v. United States, 162 U.S. 499, 511, 16 S.Ct. 864, 40 L.Ed. 1051 (1896) (“[I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses.”) (emphasis added).
It is common knowledge that, despite continuing advances, cellular phones generally have less digital storage capacity than computer hard drives; that photo and video recordings are some of the most digital storage intensive items regularly created by and saved on cellular phones; that, in order to preserve storage space on cellular phones, these recordings are routinely transferred to higher capacity storage options, whether they be cloud storage services or personal hard drives, the latter including those both separate from and internal to computers; and that such transfers, whether conducted wire-lessly or through a physical connection, are quite easy given modern technology. See Reichling, 781 F.3d at 887 (finding that it is “common knowledge to judges (like other members of the public) that images sent via *112 cell phones or Facebook accounts may be readily transferred to other storage devices”); Clayton, 68 M.J. at 424 (recognizing “the ease with which computer media may be replicated on portable devices”); Riley v. California, — U.S. -, 134 S.Ct. 2473, 2491, 189 L.Ed.2d 430 (2014) (noting that, “with increasing frequency,” cellular phones are used to access data located elsewhere “at the tap of a screen”); Mark Wilson, Castle in the Cloud: Modernizing Constitutional Protections for Cloud-Stored Data on Mobile Devices, 43 Golden Gate U. L. Rev. 261, 268 (2013) (“Mobile devices, and even smaller laptop computers, have limited storage capacity due to their small size and their necessarily small internal disks.”); Walter S. Moss-berg, Learning About Everything Under the ‘Cloud,’ Wall. St. J. (May 6, 2010) (“Your smartphone can’t run all the sophisticated programs, or store all the flies, that your PC can”), available at http://www.wsj.com/ articles/SB100014240527487039611 04576226194192477512 (last visited Feb. 15, 2017). Given the commonality of these aspects of modern cellular phones, courts are increasingly confronting the specific scenario of the transfer of elicit digital material—e.g., inappropriate images and videos—from cellular' phones to computers. See, e.g., United States v. Napier, 787 F.3d 333, 338 (6th Cir. 2015); United States v. Grzybowicz, 747 F.3d 1296, 1310-11 (11th Cir. 2014); United States v. Norton, 557 Fed.Appx. 615, 616 (8th Cir. 2014); see also United States v. Wilson, 217 F.Supp.3d 165, 171, 2016 WL 6683268, at *4 (D. D.C. 2016) (“Defendant stated that she accessed [a cloud storage service] on her cellular phone to collect, store, and share her child pornography.”). The application of this common knowledge further bolsters the military magistrate’s substantial basis for her finding of probable cause to search and seize Appellant’s laptop computer.
The majority, however, misinterprets precedent and employs dubious logic in an attempt to avoid the commonsense conclusions noted above. First, it cites Riley, 134 S.Ct. at 2489, for the proposition that modern cellular phones have “‘immense storage capacity”’ that can hold “ ‘thousands of pictures,’ ” and that this lessens the necessity of transferring data from cellular phones .to other digital storage mediums. Nieto, 76 M.J. at 107, But these quotations are taken out of context. The Supreme Court’s statement that modern cellular phones have “immense storage capacity” was made comparing them to what individuals could previously physically carry on their person and older phone models. It in no way contradicts the common knowledge that computers generally have much larger digital storage capacities than cellular phones. In addition, the Supreme Court’s comment regarding “thousands of pictures” is made in reference to á distinct storage capacity: “16 gigabytes.” Riley, 134 S.Ct. at 2489. This storage volume could certainly hold thousands of photograph files if solely devoted to that function, but the hard drive of a cellular phone is responsible for facilitating the functioning of the entire device, not just storing photos. As such, “16 gigabytes” is generally consumed by many other files and functions besides simply photo storage, and so the storage of “thousands of pictures” is generally not practicable.
Second, the majority’s argument in favor of treating modern cellular phones as digital islands contradicts itself. It notes the modern “age of ‘smart phones’ ” as a reason why SA Sandefur’s assertion that soldiers at FOBs usually transfer recording files from their phones to computers is “outdated and ... of little value,” Nieto, 76 M.J. at 107. But this contention serves the opposite purpose. “Smart phones” are actually means of connection that dramatically enhance the ability and opportunities to collect data and disseminate it across devices. Accordingly, “[t]oday’s cell phones, with their capacity to reach the Internet, the cloud, and to store millions of documents and photographs [thereby], can no longer analogize to a run-of-the-mill wardrobe. Instead, they are also a portal.” United States v. Mayo, No. 2;13-CR-48, 2013 U.S. Dist. LEXIS 158866 at *29, 2013 WL 5945802, at *8 (D. Vt. 2013); see also United States v. Cotterman, 709 F.3d 952, 965 (9th Cir. 2013) (“[A] digital device is a conduit to retrieving information from the cloud.”). In fact, modern cellular phones have such “immense storage capacity” because of their *113 easy connection to other storage mediums, such as cloud storage services and traditional computers. See, e.g., Riley, 134 S.Ct. at 2491; United States v. Saboonchi, 990 F.Supp.2d 536, 563 (D. Md. 2014); In re Cellular Telephones, No. 14-MJ-8017-DJW, 2014 U.S. Dist. LEXIS 182165, at *14-18, 2014 WL 7793690, at *5 (D. Kan. 2014); Mayo, 2013 U.S. Dist. LEXIS 158866 at *29, 2013 WL 5945802, at *8; see also Wilson, 2016 U.S. Dist. LEXIS 157085 at *13, 2016 WL 6683268, at *4. Rather than illuminating any lack of technological understanding on the part of SA Sandefur, a law enforcement officer with a great deal of experience in this area, the majority reveals its own deficient grasp of the contemporary consumer electronics environment and its networked nature.
Given the state of the law of probable cause, the evidence presented to the military magistrate, and the current state of common knowledge regarding modern cellular phones, the magistrate certainly had a substantial basis for her positive finding. The majority, however, avoids reaching this conclusion by applying a heightened requirement for probable cause than what precedent requires:
In order to identify a substantial basis for concluding that probable cause existed to believe that Appellant’s laptop was linked to the crime, we conclude that—at a minimum—there needed to be some additional showing, such as the fact that Appellant actually downloaded images (illicit or otherwise) from his cell phone to his laptop, stored images on his laptop, or transmitted images from his laptop.
Nieto, 76 M.J. at 107-08. This appears to require direct evidence of particular conduct, and therefore a likelihood that incriminating material will be found on the laptop, or that a preponderance of the evidence supports this supposition. But such a requirement does not comport with Supreme Court precedent requiring only a “fair probability” that incriminating material will be found, Gates, 462 U.S. at 238, 103 S.Ct. 2317, or our own precedent stating that “the evidence presented ... need not be sufficient to support a conviction, nor even to demonstrate that an investigator’s belief is more likely true than false.” Leedy, 65 M.J. at 213 (citations omitted); see also Gates 462 U.S. at 235, 103 S.Ct. 2317 (“Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence ... have no place in the [probable cause] decision.”). Courts have consistently
upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation, ... but on the type of crime, the nature of the .... items, the extent of the suspect’s opportunity for concealment, and normal inferences as to where a criminal would be likely to his [incriminating material].
United States v. Lucan, 430 F.2d 1051, 1064 (9th Cir. 1970) (citations omitted); accord United States v. Anton, 546 F.3d 1355, 1358 (11th Cir. 2008); United States v. Martin, 426 F.3d 68, 74-77 (2d Cir. 2006). More specifically, they have upheld positive probable cause findings pertaining to digital devices in an accused’s possession other than those used to commit the alleged offense when that offense involved inappropriate digital recordings. See United States v. Kapordelis, 569 F.3d 1291, 1310-12 (11th Cir. 2009); see also United States v. Mann, 692 F.3d 779, 786 n.2 (7th Cir. 2010).
Since the first military magistrate had a substantial basis for authorizing the search and seizure of Appellant’s laptop computer, it necessarily follows that the second magistrate did as well. This is because, in addition to all of the information that was presented to the first magistrate, the second was also informed that Appellant confessed to making numerous photographic and video recordings of fellow servicemembers in compromising positions for his own sexual gratification. Thus, the military judge’s denial of the motion to suppress evidence gleaned from the searches and seizures in question should be affirmed.
Overall, a constellation of shortcomings with regard to the law of probable cause, the facts of this case, and the application of law to fact envelops the majority opinion. I therefore reiterate my respectful dissent.