Judge BAKER
delivered the opinion of the Court.
Appellant entered mixed pleas to two specifications under Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000), before a military judge sitting as a general court-martial. He pled guilty to receipt of child pornography but contested a separate specification alleging wrongful possession of child pornography. He was ultimately convicted of both offenses. The adjudged and approved sentence included a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances and reduction to pay grade E-l. The United States Air Force Court of Criminal Appeals affirmed. United States v. Macom-ber, No. ACM 36693, 2007 CCA LEXIS 345, 2007 WL 2500313 (A.F.Ct.Crim.App. Aug. 31, 2007) (unpublished).
Prior to trial, Appellant moved to suppress evidence seized as a result of a search of his military dorm room based on a lack of probable cause. The military judge accepted a stipulation of fact agreed to by the parties in support of the motion. The military judge denied the motion, concluding that the search authority had probable cause to authorize the search. Appellant challenges that ruling in this Court. For the reasons that follow, we affirm.[1]
FACTS[2]
In February 2004, Special Agent (SA) Novlesky of the Immigration and Customs Enforcement Agency (ICE) in Minot, North Dakota was notified by his agency colleagues that during a child pornography website takedown operation called “Operation Falcon,” Appellant was identified as a child pornography website subscriber. The website known as “LustGallery.com — A Secret Loli-tas Archive” was dismantled during Operation Falcon, and ICE agents recovered credit card information relating to its subscribers, including Appellant. As a result of Operation Falcon, SA Novlesky received a “Site Index” listing child pornography website subscribers located in North Dakota. Appellant *216 was identified on this index by his name, dormitory address, telephone number, commercial e-mail account and credit card information. The index lists: “Edward Macomber, Dorm 211 Unit 503, Minot, North Dakota, 58705, (701) 727-6236....” The evidence showed that Appellant had accessed “LustGallery.com” on April 18,2003.
SA Novlesky subsequently obtained the grand jury evidence relating to Operation Falcon in order to 'verify the information presented to him by his ICE colleagues. He then contacted the bank relating to the credit card information linked to Appellant in order to verify the accuracy of the information. Because the address listed by Appellant when he signed up for the “LustGallery.com” services appeared to be a military dormitory address, SA Novlesky concluded that Appellant was a member of the Air Force stationed at Minot Air Force Base (AFB). He contacted the Air Force Office of Special Investigation (OSI) to share the information he had and to verify Appellant’s identity and military status. SA Novlesky met with OSI Special Agent Patrick White to discuss options for proceeding with the investigation of Appellant, and the agents agreed to conduct a joint investigation. SA Novlesky recommended to OSI that Postal Inspector Rachel Griffin be contacted to send a target letter to Appellant offering him child pornography. OSI agreed and Inspector Griffin was contacted and brought in as part of the investigation team.
Pursuant to this investigation, Inspector Griffin sent a letter and a “Sexual Interest Questionnaire” to Appellant from Eclipse Films, a fictional company purporting to specialize in illegal pornography. The correspondence stated that pornography offered by the film company 'was “illegal” and must be kept in the “strictest confidence.” The correspondence was sent to Appellant’s mailing address at Dorm 211 on Minot AFB. Appellant was on temporary duty to Guam at the time, so the letter was forwarded to him at his temporary duty location. Appellant completed the questionnaire listing “teen sex” and “pre-teen sex” among his sexual interests and indicated his interest in buying pornography from the company. He mailed the items back to Inspector Griffin at her undercover post office box. The letter was postmarked from Guam, but Appellant indicated his return address on the envelope as “Dorm 211, Unit 503, Minot AFB, ND 58705.” Inspector Griffin sent Appellant a letter thanking him for his interest list and describing the available videos fitting his stated sexual interests along with an order form pricing the videos at twenty dollars each.
On June 14, 2004, Inspector Griffin received a pre-stamped white business size envelope in the mail. The envelope was postmarked “Minot, ND June 8, 2004” with the return address listed as “Edward Macomber, Dorm 211, Unit 503, Minot AFB, ND 58705.” The envelope contained a completed order form indicating Appellant’s request to purchase two child pornography videos titled “IC-5 Mixed Sleepover” and “IN-9 Sweet Sixteen.” A postal money order was enclosed for the amount of forty dollars payable to Eclipse Films. The purchaser was listed as “Ed Macomber, Dorm 211, Unit 503, Minot AFB, ND 58705.”
The law enforcement team planned a controlled delivery of a package containing the two child pornography videos ordered by Appellant. Prior to the controlled delivery, SA White coordinated with Inspector Griffin and the Minot legal office to prepare an affidavit in support of search authority for Appellant’s dormitory room. The application for search authorization was prepared for submission to the base magistrate, Lieutenant Colonel (Lt Col) James Harrold. Although this was SA White’s first child pornography case, he received guidance from fellow OSI agents with more specific experience in child pornography cases. Inspector Griffin provided SA White with profile information relating to individuals who view child pornography and who have a sexual interest in children. She conferred with other postal inspectors prior to advising SA White on the profile information in the affidavit. SA White discussed the affidavit with other more experienced agents in his office and his detachment commander.
*217 On June 21, 2004, SA White briefed the magistrate on the investigation into Appellant’s activities and provided him the affidavit in support of search authority for Appellant’s dormitory room and personal vehicle. Lt Col Harrold read the affidavit twice and discussed its contents with SA White. SA White told Lt Col Harrold that Appellant was identified as a subscriber to a known child pornography website through Operation Falcon. However, Lt Col Harrold was not told that Appellant had accessed the website on April 18, 2003, fourteen months earlier. Lt Col Harrold was also informed that Appellant had identified himself through a sexual interest questionnaire as having a sexual interest in “teen sex” and “pre-teen sex” and that Appellant had ordered two child pornography videotapes through the mail from undercover Inspector Griffin for delivery to his address at Dorm 211, Minot AFB, North Dakota. SA White discussed the operational plan for the controlled delivery of the package with Lt Col Harrold, along with the alternative plans in the event that Appellant did not return to his dorm room or in the event he tried to leave the base with the package. The affidavit provided to Lt Col Harrold listed a synopsis of each movie Appellant had ordered. In the synopsis, both movies were described in fairly graphic detail as featuring children engaged in sexual acts.
SA White based the request for search authority on Appellant’s actions prior to his receipt of the actual videos from Eclipse Films. Specifically, the request was based on Appellant’s subscription to the “LustGallery.com” child pornography website using his dorm room address, his self-proclaimed interest in children engaged in sex, and his attempt to order movies containing child pornography. While the affidavit stated that SA White expected to find a parcel addressed to Appellant from Eclipse Films, this was not the basis for the search authority nor was it the reason the magistrate found probable cause.
The affidavit also included “pedophile profile information.” This information was based on SA White’s discussion with Inspector Griffin and included profile information relative to individuals interested in child pornography or those sexually interested in children. It was also based on SA White’s training while attending the OSI Academy and the Federal Law Enforcement Training Center during which “typical behavior of child pornographers” was described. The affidavit stated:
child pornographers and persons with a sexual attraction to children almost always maintain and possess child pornography materials such as: photographs, magazines, negatives, films, videotapes, graphic image files, correspondence, mailing lists, books, tapes, recordings and catalogs. These materials are stored in a secure but accessible location within their immediate control, such as in the privacy and security of their own homes, most often in then-personal bedrooms.
Lt Col Harrold granted authority for the search of Dorm 211, Room 104, Minot AFB, ND 58705, and the search of Appellant’s 2002 Mitsubishi Mirage. According to the stipulation of fact, he based his probable cause finding “mainly on the information linking [Appellant] to a pay-for child pornography website, together with the information submitted by [Appellant] indicating his sexual interest in children, the correspondence whereupon [Appellant] listed his dormitory address attempting to obtain child pornography, and the fact that [Appellant] ordered two child pornography videos through the mail.” He considered all of this information together with the profile information from experienced agents in the field that showed the likelihood that individuals with child pornography usually keep close possession and control of the pornography and often keep it in their homes and bedrooms.
That same day, Inspector Griffin and SA White set up the controlled delivery of the child pornography videos to Appellant’s mailing address at the Postal Service Center at Minot AFB. The OSI agents were aware that the mail delivery system on Minot AFB required that packages be picked up by dorm residents at the service center rather than delivered to them at their dorm rooms. Because of the illegal nature of child pornography, it was necessary for the agents to main *218 tain control of or visual contact with the contraband package at all times. Therefore, OSI agents conducted surveillance of Appellant throughout the day on June 21, 2004, while Inspector Griffin maintained visual control of the package in the service center. Appellant picked up the package containing the child pornography videos and exited the service center. Two agents outside the service center drove by Appellant as he exited the facility in an effort to photograph him. However, the camera flash went off when they took the picture. Appellant proceeded to his vehicle, sat inside for a few moments, then got out of his vehicle and attempted to return the package to the service center, at which point he was apprehended.
Following the apprehension, the agents initiated a search of Appellant’s residence in accordance with the search authorization. The search revealed several pages of printed materials and photos, writings Appellant had made regarding specific child pornography websites, and several hundred suspected child pornography images retrieved from his computer.
DISCUSSION
We review a military judge’s denial of a motion to suppress for an abuse of discretion. United States v. Leedy, 65 M.J. 208, 212 (C.A.A.F.2007); United States v. Rader, 65 M.J. 30, 32 (C.A.A.F.2007). An abuse of discretion occurs if the military judge finds clearly erroneous facts or misapprehends the law. Leedy, 65 M.J. at 213. In this case, the military judge relied on facts stipulated to by the parties, therefore the question here concerns the military judge’s application of the law, which we review de novo. Rader, 65 M.J. at 32 (conclusions of law reviewed de novo); United States v. Flores, 64 M.J. 451, 454 (C.A.A.F.2007). The core legal question in the case is whether the military judge correctly ruled that the search authority had a substantial basis for determining that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); United States v. Carter, 54 M.J. 414, 418 (C.A.A.F.2001). “ ‘The task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate’s decision to issue the warrant.’” United States v. Monroe, 52 M.J. 326, 331 (C.A.A.F.2000) (quoting Massachusetts v. Upton, 466 U.S. 727, 728, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984)).
This standard reflects the law’s preference for warrants and for independent review by magistrates. “In reviewing a decision that there was probable cause for a search, we must keep in mind that a determination of probable cause by a neutral and detached magistrate is entitled to substantial deference.” Carter, 54 M.J. at 419 (citation and quotation marks omitted); Monroe, 52 M.J. at 331 (citations omitted); United States v. Maxwell, 45 M.J. 406, 423 (C.A.A.F.1996) (citation omitted). “A deferential standard of review is appropriate to further the Fourth Amendment’s strong preference for searches conducted pursuant to a warrant.” Upton, 466 U.S. at 733, 104 S.Ct. 2085. We have interpreted the Supreme Court’s guidance to require that resolution of doubtful or marginal cases should be largely determined by the preference for warrants and that “[cjlose calls will be resolved in favor of sustaining the magistrate’s decision.” Monroe, 52 M.J. at 331 (citation and quotation marks omitted); Maxwell, 45 M.J. at 423 (citation omitted). “ ‘A grudging or negative attitude by reviewing courts towards warrants,’ is inconsistent with the Fourth Amendment’s strong preference for searches conducted pursuant to a warrant; ‘courts should not invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than a commonsense, manner.’ ” Gates, 462 U.S. at 236, 103 S.Ct. 2317 (quoting United States v. Ventresca, 380 U.S. 102, 108-109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)) (alteration in original); Carter, 54 M.J. at 419.
“Probable cause to search exists when there is a reasonable belief that ... property or evidence sought is located in the place or on the person to be searched.” Military Rule of Evidence 315(f)(2). The search authority is required to make this determination based on the “totality-of-the-circum *219 stances.” Gates, 462 U.S. at 238, 103 S.Ct. 2317; Carter, 54 M.J. at 418; Monroe, 52 M.J. at 331; United States v. Bethea, 61 M.J. 184, 187 (C.A.A.F.2005). A probable cause determination is “a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before” the search authority, “there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Gates, 462 U.S. at 238,103 S.Ct. 2317; Bethea, 61 M.J. at 187 (citation omitted). As this Court has explained, probable cause deals with probabilities:
It is not a technical standard, but rather is based on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause requires more than bare suspicion, but something less than a preponderance of the evidence. Thus, the evidence presented in support of a search need not be sufficient to support a conviction, nor even to demonstrate that an investigator’s belief is more likely true than false, there is no specific probability required, nor must the evidence lead one to believe that it is more probable than not that contraband will be present. The duty of the reviewing court is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.
[PJrobable cause is founded not on the determinative features of any particular piece of evidence provided an issuing magistrate ... but rather upon the overall effect or weight of all factors presented to the magistrate.
Leedy, 65 M.J. at 213 (citations and quotation marks omitted). Finally, “[i]n reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party.” Id. (citation and quotation marks omitted); United States v. Reister, 44 M.J. 409, 413 (C.A.A.F.1996).
ANALYSIS
Appellant makes four arguments challenging the magistrate’s finding of probable cause. In particular, Appellant argues that there was insufficient information placed before the magistrate to reflect a search nexus to his dorm room, a computer in his dorm room, and to link Appellant to the generic pedophile profile presented by SA White. Finally, he argues that his subscription to the “LustGallery.com” site did not provide such a nexus because the information was fourteen months old and therefore stale. These arguments are necessarily related where the totality of the circumstances is weighed. With that in mind, we consider each argument in turn, recognizing that the question presented is not whether one fact or another provided sufficient cause, but whether the facts taken as a whole did so.
First, Appellant argues there was an insufficient nexus between the child pornography discovered in his possession at the post office and his dorm room to provide cause to search his dorm room. The argument is based on the apparent ground that the mail for dormitory residents was delivered to the Postal Service Center as opposed to the individual rooms; since Appellant was apprehended at the service center, it was unreasonable to infer that additional child pornography would be found in his dorm room.
The facts indicate otherwise. As stipulated, Appellant used his dorm address as the return address in his correspondence with the agents when he ordered pornographic videotapes and when responding to the sexual interest questionnaire. Further, Appellant concedes that this was his only address. In the military context, the barracks or dormitory often serves as the ser-vieemember’s residence, his or her home. That was true for Appellant. Based on these facts, common sense would suggest a fan-probability that any child pornography Appellant might possess would be located in his dorm room.
Appellant’s first nexus argument necessarily leads to Appellant’s additional arguments that the evidence presented to the magistrate did not support a fair inference that Appellant owned a computer, on which he might store child pornography, or that he fell within the generic pedophile profile presented to *220 the magistrate. In Appellant’s view, without such an inference, there was no reason to believe pornography would be stored in his room. Appellant correctly points out that while SA White’s affidavit presented a “pedophile profile,” including and in particular the statement that pedophiles are likely to store pornography at their places of residence, it did not expressly conclude or state that Appellant fit the profile. Indeed, while courts have relied on such profiles to inform search determinations, clearly, a profile alone without specific nexus to the person concerned cannot provide the sort of articulable facts necessary to find probable cause to search.
But that is not this case. The stipulated facts reflect that Appellant had subscribed to an Internet child pornography web service in the past, and that he expressed an ongoing interest in child pornography in the present. He had recently filled out a questionnaire documenting this interest. Such facts may or may not place Appellant within a generic pedophile profile or a clinical pedophile profile,[3] but they certainly reflect an ongoing interest in child pornography. Based on common sense, law enforcement experience, and case law, the military judge reasonably concluded there was a fair probability that a person with an interest in child pornography, who has ordered child pornography in the past and in the present, is likely to store such pornography in some quantity at a secure and private location.. For a servicemember residing on a military installation, that means his dormitory room, barracks, or vehicle.
This also moots Appellant’s argument that the only evidence presented to the magistrate suggesting that he might own a computer was based on his earlier subscription to an Internet child pornography service. As the parties recognize in their arguments, the critical question in this case is whether there was sufficient nexus to the dorm room to substantiate a search. Once the agents had probable cause to search the dorm room, agents were also authorized to search where the items sought might reasonably be located, and therefore the computer was within the scope of the search authorization. In any event, Lt Col Harrold reasonably relied on the common sense inference that a military member who subscribed to an Internet website while listing his dormitory as his address owned a computer, and that the computer would likely be found in his dormitory room.
That leads to Appellant’s final argument that, to the extent the magistrate’s finding of probable cause was based on his earlier subscription to a pornographic web service, that information was stale. Moreover, because the magistrate was not told of this time lag, the affidavit in general is unreliable and lacks credibility. Timeliness informs probable cause. United States v. Lopez, 35 M.J. 35, 38 (C.M.A.1992). The passage of time may diminish the likelihood that what is sought will be found in the place to be searched. Id. As a result, the magistrate should have been apprised of this time lag. However, “[wjhether too long a period has elapsed from the time the facts are obtained until the search is authorized depends on many factors.” Id. They may include, but are not limited to, the location to be searched, the type of crime involved, the nature of the articles to be seized, and how long the crime has been continuing. Id. In Leedy, for example, we recognized that in the context of child pornography, a law enforcement expert’s experience might reasonably inform a magistrate’s judgment as to whether, and for how long, a child pornographer might retain pornography. 65 M.J. at 216. However, we also cautioned that “relying upon expertise too heavily, at the expense of hard facts, can be troubling and is open to abuse.” Id.
Here we have hard facts. The agent’s affidavit established that this was an investigation into the unlawful possession of child pornography. The nature of the contraband sought was such that it was highly portable, easily secreted, and often stored in the possessor’s home in a variety of forms and on a variety of media. The affidavit also indicated that at some point Appellant had subscribed to a child pornography website. But that information did not stand alone. This infor *221 mation prompted the agents to conduct a ruse that confirmed Appellant’s current interest in this contraband in the form of a sexual interest questionnaire and a subsequent controlled delivery. As such, it was part of the total circumstances raising the fair probability that Appellant had a present as well as a past sexual interest in or a sexual attraction to children, that he probably possessed child pornography material, and that it probably was kept where he lived.
DECISION
Based on this record, we conclude that the military judge did not err in ruling that the magistrate had a substantial basis for finding probable cause in this case. The decision of the United States Air Force Court of Criminal Appeals is affirmed.

. Oral argument in this case was heard at the Washburn University School of Law, Topeka, Kansas, as part of the Court's "Project Outreach.” See United States v. Mahoney, 58 M.J. 346, 347 n. 1 (C.A.A.F.2003). This practice was developed as part of a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

. The language of this factual recitation, with slight modification, is taken directly from the stipulation of fact agreed to by the parties and relied upon by the military judge.

. A point we need not decide in the context of this case.