*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

**UNITED STATES**
Appellee

**v.**

**Tyler G. EPPES, Captain**
United States Air Force, Appellant

**No. 17-0364**
Crim. App. No. 38881

Argued November 8, 2017—Decided April 10, 2018

Military Judge: Shaun S. Speranza

For Appellant: *William E. Cassara,* Esq. (argued)*; Major Annie W. Morgan* (on brief).

For Appellee: *Lieutenant Colonel Joseph J. Kubler* (argued); *Colonel Katherine E. Oler* (on brief); *Colonel Julie L. Pitvorec* and *Mary Ellen Payne,* Esq.

Amicus Curiae for Appellant: *Seantyel Hardy* (law student) (argued); *Angelica Nguyen* (law student) (on brief); *John H. Blume*, Esq. (supervising attorney) (on brief) — Cornell Law School.

Judge SPARKS delivered the opinion of the Court, in which Chief Judge STUCKY and Judge OHLSON joined. Judge RYAN filed a separate opinion concurring in part and concurring in the result. Senior Judge EFFRON filed a separate opinion concurring in part and dissenting in part.

_____

Judge SPARKS delivered the opinion of the Court.[1]

A military judge sitting alone convicted Appellant, in accordance with his pleas, of conspiracy, false official statement, larceny of military and non-military property, fraud against the United States government, and conduct unbecoming an officer in violation of Articles 81, 107, 121,

---

[1] We heard oral argument in this case at Cornell Law School, Ithaca, New York, as part of the Court's Project Outreach. This practice was developed as a public awareness program to demonstrate the operation of a federal court of appeals and the military justice system.

132, and 133, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 907, 921, 932, and 933. The military judge sentenced Appellant to a dismissal, a $64,000 fine, forfeiture of all pay and allowances, and ten years confinement—with a contingent additional three years confinement should he fail to pay the fine. The convening authority approved the adjudged sentence. The United States Air Force Court of Criminal Appeals affirmed. We granted review of the following issues:[2]

> I. Whether the search of Appellant's personal bags exceeded the scope of the search authorization where the agent requested authority to search Appellant's person, personal bags, and automobile, but the military magistrate authorized only the search of Appellant's person and automobile and did not authorize the search of Appellant's personal bags.

> II. Whether Appellant's right to freedom from unreasonable search and seizure under the Fourth Amendment was violated when there was no probable cause for the 7 December 2012 warrant.

## I. Background[3]

Appellant was convicted of submitting fraudulent travel vouchers and tax documents, falsifying insurance claims, stealing money and cameras from the United States government, and conspiring to unlawfully possess an intoxicating substance. The investigation into Appellant's misconduct was far-reaching and complex, and involved numerous searches and seizures. We are concerned with only two of these searches: the December 7, 2012, search of Appellant's home and the February 5, 2013, search of Appellant's bags in his workspace.

Appellant, an Air Force Office of Special Investigations (AFOSI) agent, began his duties as the Air Force Chief of

---

[2] Pursuant to his pretrial agreement, Appellant entered guilty pleas conditioned upon his right to raise the suppression issue on appeal.

[3] This background is taken substantially from the military judge's findings of fact. The parties do not contend these particular findings are clearly erroneous as they relate to the two searches at issue here.

Staff's personal security advisor in July 2012. He and his coworkers shared an office at the Pentagon and had equal and unfettered access to the desks and computers therein.

In November 2012, Appellant arranged to have his wedding at a hotel in Dallas, Texas, fraudulently claiming it was an official Air Force function. He prepared fake travel orders for his coworkers, maintaining they were his "security team," and applied for tax exempt status for himself and his wedding guests, including his family members. Appellant also paid his enlisted coworker to take leave to act as his assistant during the wedding and even provided his coworker with false documents indicating the wedding was an official Air Force function. On November 13, 2012, Appellant had a series of disagreements with the hotel staff, culminating with Appellant threatening to remove the hotel from consideration for use by government employees. On November 16, 2012, in response to Appellant's threat, the hotel manager contacted AFOSI and the office of the Chief of Staff of the Air Force. The Air Force opened an investigation based on the hotel staff's complaint.

During the week of November 19, 2012, AFOSI Special Agent (SA) Armstrong traveled to the hotel to interview the hotel employees. SA Armstrong learned of the tax exemption request for the cost of the wedding, collected false tax forms from the hotel, and obtained copies of emails Appellant exchanged with hotel staff.

AFOSI agents interviewed the supposed wedding "security team" members. These witnesses provided the AFOSI agents with the forged documents authorizing their detail and told the agents Appellant had mentioned filing insurance claims for a burglary of his previous residence.

On November 29, 2012, one of Appellant's coworkers went through the desk he shared with Appellant in search of a work-related memorandum and came across a folder labeled "wedding shower." This folder contained fraudulent travel documents authorizing the travel of a number of Appellant's family members to Dallas, Texas, for a "[Chief of Staff of the Air Force] Special Interest Itinerary for 10–11 September." Realizing the itinerary was false, Appellant's coworker scanned and emailed it to his AFOSI supervisors.

Apparently, no such Special Interest event scheduled in September ever occurred.

On December 6, 2012, AFOSI conducted a formal search of Appellant's shared desk at the Pentagon, seizing a work computer and a receipt for a camera. From December 7 to December 10, 2012, agents searched Appellant's work email accounts.

In the final stages of his initial investigation, SA Armstrong reviewed a letter of counseling Appellant received in 2008 for falsifying travel documents.

On December 7, 2012, SA Armstrong swore an affidavit requesting a search warrant before a District of Columbia Superior Court judge. SA Armstrong sought to search Appellant's home and, inter alia, Appellant's "computer hardware, computer software and digital media (e.g., computer equipment, digital storage devices, cameras, photographs, etc.)" for evidence of frauds against the government.

The Superior Court judge found probable cause to believe a search of Appellant's home would reveal evidence of a crime. He issued the warrant on December 7, 2012, and AFOSI conducted the search pursuant to the warrant on the same date. This search yielded a significant quantity of evidence including blank prescription forms already signed by a military provider, receipts and documents from two bags in Appellant's living room, as well as USB drives, hard drives, and a laptop from elsewhere in Appellant's home.

On December 8, 2012, agents interviewed Appellant, searched his person, and, with his consent, searched two of his personal bags. The bags contained travel orders on official letterhead, prescription forms, a laptop, a Blackberry, SIM cards, an iPad, and medications. Agents subsequently received verbal search authorization to search the electronic devices recovered during this search.

In mid-December, AFOSI obtained Appellant's Defense Travel System claims, manually submitted travel vouchers, and Government Travel Card records, and conducted a review of Appellant's financial, insurance, and medical records. Of sixty travel vouchers Appellant submitted

between January 2009 and December 2012, fifty-one contained false information and five were completely fraudulent. The review of Appellant's insurance records showed evidence of insurance fraud and reviews of his medical records showed "no indication that [Appellant] was prescribed the medications" for which prescriptions and prescription packaging were found in his home.

At some point during the investigation Appellant was moved from his regular work station at the Pentagon to a small office in Chapel 1 at Joint Base Andrews. On February 5, 2013, SA Cooper submitted a signed and sworn affidavit requesting authorization to search Appellant and his personal bags at the Chapel 1 office, as well as his personal vehicle. A military magistrate granted the authorization, but did not expressly authorize a search of Appellant's bags.

Pursuant to the authorization, SA Cooper and his colleagues searched Appellant's person, vehicle, and office on February 5, 2013. Agents recovered a jewelry invoice, pharmacy receipts, and documents evidencing false claims against the United States in Appellant's vehicle. They found leave authorizations, bank statements, a permanent duty travel voucher, blank Chief of Staff of the Air Force documents, and various other documents in Appellant's office. Agents recovered a watch they believed to be evidence of insurance fraud during the search of Appellant's person. After searching Appellant's person, agents searched Appellant's immediate vicinity and two of his bags. With respect to the bags, the military judge found that, upon discovering evidence of travel fraud "in plain view … SA Cooper stopped the search and consulted the 11 WG Deputy Staff Judge Advocate (DSJA). The DSJA advised the agents to continue the search in accordance with the authorization, but to also collect other documents they know to be evidence of other crimes." A Report of Investigative Activity submitted for this search indicates the bags in question contained the following items of relevant evidentiary value:

> one Marriot room rate discount authorization form with the date covered, an 18-page merchandise inventory sheet, A 10-page United Services Automobile Association (USAA) valuable personal property (VPP) insurance document, 11 airline

tickets and travel related documents, three blank USAA checks, 12 pages of USAA VPP documents, three blank [CSAF] letter documents, one Cole Haan receipt, one Citi direct statement, One ATM card with "Africa Russia" written on it, and one Foundry Lofts envelope with four documents inside.

That same day, SA Cooper and his colleagues again searched Appellant's home pursuant to a judicial warrant, and recovered various documents relating to the sale and appraisal of jewelry and watches, as well as insurance documents related to Appellant's vehicle, airline tickets, receipts, and cameras.

Defense counsel filed a motion to suppress much of the evidence offered against Appellant, including evidence gathered in the December 7, 2012, and February 5, 2013, searches.

The military judge denied the motion to suppress, holding both searches were supported by probable cause, and as to the February 5 search, the agents were authorized to search Appellant's person and reasonably searched the area immediately around him, including the bags.

## II. Discussion

We review a military judge's denial of a motion to suppress for an abuse of discretion. *United States v. Nieto*, 76 M.J. 101, 105 (C.A.A.F. 2017); *United States v. Clayton*, 68 M.J. 419, 423 (C.A.A.F. 2010); *United States v. Leedy*, 65 M.J. 208, 212 (C.A.A.F. 2007). We "reverse for an abuse of discretion if the military judge's findings of fact are clearly erroneous or if his decision is influenced by an erroneous view of the law." *United States v. Owens*, 51 M.J. 204, 204 (C.A.A.F. 1999) (internal quotation marks omitted) (citation omitted). "[I]n reviewing a ruling on a motion to suppress, we consider the evidence in the light most favorable to the prevailing party." *United States v. Macomber*, 67 M.J. 214, 219 (C.A.A.F. 2009) (internal quotation marks omitted) (citations omitted).

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall

not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. A search conducted pursuant to a warrant or search authorization is presumptively reasonable. *See United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). When evidence is unlawfully obtained, however, an accused may timely move to suppress it and, pursuant to the exclusionary rule, a military judge may exclude it. *See* Military Rule of Evidence (M.R.E.) 311(a); *see also Murray v. United States*, 487 U.S. 533, 536–37 (1988) (explaining the exclusionary rule prohibits the admission of unlawfully obtained primary and derivative evidence).

## A. The December 7, 2012, search of Appellant's residence[4]

We find the December 7, 2012, search of Appellant's residence was supported by probable cause and was therefore valid.

Appellant contends the warrant issued by the District of Columbia Superior Court judge to search Appellant's residence on December 7, 2012, was not supported by probable cause because there was an insufficient nexus between Appellant's computer recovered during the search and the crime Appellant was suspected of committing.

In resolving search and seizure issues, we rely on a number of principles emerging from our own precedent, United States Supreme Court precedent, and the *Manual for Courts-Martial, United States*.

"Probable cause to search exists when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched." M.R.E. 315(f)(2). "Probable cause deals with probabilities." *Leedy*, 65 M.J. at 213 (internal quotation marks omitted) (quoting *Brinegar v. United States*, 338 U.S. 160, 175 (1949)). "[T]here is no specific probability required, nor must the evidence lead one to believe that it is more probable than not that contraband will be present." *Id.* "[P]robable cause is a flexible, commonsense standard."

---

[4] To facilitate the analysis, we address the searches in chronological order.

*United States v. Bethea*, 61 M.J. 184, 187 (C.A.A.F. 2005) (internal quotation marks omitted) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). "It is not a technical standard, but rather is based on the factual and practical considerations of everyday life on which reasonable [persons], not legal technicians, act." *Leedy*, 65 M.J. at 213 (internal quotation marks omitted) (citation omitted). Probable cause determinations made by a neutral and detached search authority are entitled to substantial deference. *Nieto*, 76 M.J. at 105; *Clayton*, 68 M.J. at 423; *Macomber*, 67 M.J. at 218. Resolution of doubtful or marginal cases should be largely determined by the preference for warrants, and close calls will be resolved in favor of sustaining the search authority's decision. *Nieto*, 76 M.J. at 105, *Clayton*, 68 M.J. at 423; *Macomber*, 67 M.J. at 218; *United States v. Monroe*, 52 M.J. 326, 331 (C.A.A.F. 2000). Courts should not invalidate warrants by interpreting affidavits in a hypertechnical, rather than a commonsense manner. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Clayton*, 68 M.J. at 423; *Macomber*, 67 M.J. at 218; *United States v. Gallo*, 55 M.J. 418, 421 (C.A.A.F. 2001). "A grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant …." *Gates*, 462 U.S. at 236 (internal quotation marks omitted) (citation omitted).

The search authority must have "a substantial basis for concluding probable cause exist[s]." *Nieto*, 76 M.J. at 105 (internal quotation marks omitted) (quoting *United States v. Rogers*, 67 M.J. 162, 164–65 (C.A.A.F. 2009)). "A substantial basis exists 'when, based on the totality of the circumstances, a common-sense judgment would lead to the conclusion that there is a fair probability that evidence of a crime will be found at the identified location.' " *Id.* (quoting *Gates*, 462 U.S. at 238). To establish probable cause, a sufficient nexus must be shown to exist between the alleged criminal activity, the things to be seized, and the place to be searched. 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 3.7(d), at 518 (5th ed. 2012). Such a nexus "may be inferred from the facts and circumstances of a particular case, including the type of crime, the nature of the items sought, and reasonable

inferences about where evidence is likely to be kept." *Nieto*, 76 M.J. at 106 (internal quotation marks omitted) (citations omitted). Reviewing courts may read the affidavit and warrant to include inferences the issuing magistrate reasonably could have made. *See United States v. Williams*, 544 F.3d 683, 686–87 (6th Cir. 2008) (reasoning "[the courts are] entitled to draw reasonable inferences" and holding an issuing judge *could* have inferred a nexus (alteration in original) (internal quotation marks omitted) (citation omitted)); *United States v. Hodge*, 246 F.3d 301, 305–06 (3d Cir. 2001) (reasoning "[a] court is entitled to draw reasonable inferences about where evidence is likely to be kept" and holding a magistrate *might* have inferred a nexus under the circumstances (internal quotation marks omitted) (citation omitted)); *see also State v. Mell*, 182 P.3d 1, 14 (Kan. Ct. App. 2008) (explaining trial judges do not always "cover the issues raised on appeal to the extent [appellate courts] would like"). In establishing probable cause a magistrate may rely, in part, on the affiant law enforcement agent's professional experience, knowledge, and expertise. *See Leedy*, 65 M.J. at 215–16.

In evaluating the issuing search authority's probable cause finding, we examine: 1) the facts known to the authority when he issued the warrant and 2) the manner in which he came to know these facts. *Id.* at 214. Where the search authority has "a substantial basis to find probable cause," a military judge does not abuse his discretion in denying a motion to suppress. *Nieto*, 76 M.J. at 105 (internal quotation marks omitted) (citation omitted).

We conclude the Superior Court judge had "a substantial basis for concluding probable cause existed" because he was presented with sufficient facts to reasonably infer evidence of Appellant's crimes, namely fraud against the government and other offenses, would probably be recovered on a computer in Appellant's home. *Id.* (internal quotation marks omitted) (citation omitted); *Leedy*, 65 M.J. at 214.

SA Armstrong's affidavit in support of the warrant stated there was probable cause to believe Appellant committed several crimes, including frauds against the United States. The affidavit stated there was probable cause to search Appellant's residence and to seize any computers

and a variety of other items because: 1) Appellant had submitted false documents to the hotel personnel representing his wedding was an official event; 2) Appellant had provided signed state tax exemption forms falsely certifying that several of the wedding attendees were on official business; 3) Appellant made false claims about his tax status to hotel staff via email; 4) it had been discovered that Appellant had produced fraudulent invitational travel orders for members of his and his fiancée's family to travel to Dallas, Texas, purportedly to attend an earlier official Air Force event that never occurred; and 5) there was an indication Appellant had previously engaged in similar misconduct involving fraud. Finally, the affidavit informed the issuing judge Appellant was a law enforcement official.

The fact that the affidavit stated Appellant had used email to communicate with the hotel personnel raised a reasonable inference Appellant probably used a computer or other digital device or media as an instrumentality to pursue the suspected fraudulent scheme. The affidavit also supports the further reasonable inference that evidence of this type of criminal conduct, namely travel orders, letters, notes, financial records, and receipts, probably resided on such devices. Finally, unlike the average servicemember or government employee, Appellant, as a law enforcement official, had specialized knowledge and training about criminal investigative techniques and where individuals engaged in criminal conduct might secret the fruits and instrumentalities of their crimes. Together, these facts establish that the issuing judge could reasonably have inferred that given the nature of the criminal activity under investigation, Appellant probably had evidence of this criminal activity and the instrumentalities used to carry it out at his residence.[5] This inference is all the more reasonable given that there was no indication Appellant

---

[5] We certainly do not intend to suggest that, as a general matter, servicemembers are likely to store criminal evidence on their home computers. The knowledge at issue here is specific to Appellant. Without some other incriminating facts, a search authority cannot reasonably infer that the average servicemember is more likely to store evidence of criminality on his home computer than on his work computer.

lived elsewhere, and Appellant shared both his workspace and his computer with his AFOSI coworkers.

Given the state of the investigation on December 7, 2012, the information contained in the affidavit, and SA Armstrong's experience as a law enforcement official, the Superior Court judge had a substantial basis for finding probable cause regarding the search of the residence and the military judge did not abuse his discretion in ruling the warrant issued for the search of Appellant's residence was supported by probable cause.

### B. The February 5, 2013, search of Appellant's bags

We first conclude that the search of Appellant's bags in his Chapel 1 office was beyond the scope of the search authorization.

The Fourth Amendment requires all warrants "particularly describ[e] the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. "Th[is] requirement … is conventionally explained as being intended to protect against general, exploratory rummaging in a person's belongings. But it also serves to prevent circumvention of the requirement of probable cause by *limiting the discretion of officers executing a warrant to determine the permissible scope of their search*." *United States v. Sims*, 553 F. 3d 580, 582 (7th Cir. 2009) (emphasis added) (internal quotation marks omitted) (citations omitted).

Here, the affidavit in support of the search authorization expressly and specifically stated it was being submitted "in support of a request for separate search authority for (1) EPPES' person, (2) EPPES' personal bags and (3) EPPES' personally owned vehicle." The authorization returned to SA Cooper from the military magistrate authorized a search of "the person of TYLER G. EPPES, Capt, USAF" and his vehicle.

It is likely the omission of the bags from the search authorization was simply a scrivener's error because the agent who swore the affidavit also apparently authored the search authorization signed by the magistrate. It seems incongruous that the agent would include the bags in the

affidavit and then intentionally leave them out of the drafted search authorization.

Even if the discrepancy was not a scrivener's error, we conclude the military judge did not abuse his discretion in admitting the contents of the bags because agents inevitably would have searched the bags and discovered their contents. The military judge's conclusions of law touch generally on the independent source doctrine and the inevitable discovery doctrine as they pertain to the various searches in this case.[6]

The two doctrines, while similar, are separate exceptions to the exclusionary rule. The inevitable discovery rule is said to be a variation on the independent source rule. 6 LaFave, *supra* § 11.4(a), at 339. Thus, under the inevitable discovery rule, the question is not whether the police did in fact acquire certain evidence by reliance upon an untainted (or independent) source, but rather whether evidence found because of a Fourth Amendment violation *would inevitably have been discovered lawfully. Id.* We conclude that this analysis is more appropriately applied to the question of the admissibility of the contents of Appellant's personal bags searched on February 5, 2013.

The doctrine of inevitable discovery allows for the admission of illegally obtained evidence when the government "demonstrate[s] by a preponderance of the evidence that when the illegality occurred, the government agents possessed, or were actively pursuing, evidence or leads that would have inevitably led to the discovery of the evidence in a lawful manner." *Wicks*, 73 M.J. at 103 (internal quotation marks omitted) (citation omitted); *see also Nix v. Williams*, 467 U.S. 431 (1984). The inevitable discovery of the evidence must occur through "routine procedures of a law enforcement agency" and "mere speculation and conjecture" as to inevitable discovery is not sufficient. *Wicks*, 73 M.J. at 103 (internal quotation marks omitted) (citations omitted). M.R.E. 311(c)(2) codifies the inevitable discovery doctrine into military law as follows,

---

[6] It is not clear whether his conclusions extended specifically to the search at issue here. We will thus analyze whether either is applicable in the instant case.

"Evidence that was obtained as a result of an unlawful search or seizure may be used when the evidence would have been obtained even if such unlawful search or seizure had not been made."

> While the inevitable discovery exception does not apply in situations where the government's only argument is that it had probable cause for the search, the doctrine may apply where, in addition to the existence of probable cause, the police had taken steps in an attempt to obtain a search warrant.

*United States v. Souza*, 223 F.3d 1197, 1203 (10th Cir. 2000). The doctrine may apply where it is reasonable to conclude officers would have obtained a valid authorization had they known their actions were unlawful.[7] *See United States v. Wallace*, 66 M.J. 5, 10 (C.A.A.F. 2008) (holding the doctrine applicable where consent to a search was invalid, reasoning the officers would have obtained a valid warrant to retrieve the evidence at issue if the accused had not consented). We find the inevitable discovery doctrine applies in this case for the following reasons.

First, we believe the agents would have applied for and received authorization to search had they recognized the discrepancy omitting the bags. The agents conducted a search beyond the scope of the authorization, but within the confines of the affidavit. Since the military judge made no finding of bad faith, we assume the agents were unaware of the discrepancy between the warrant and the affidavit. Had

---

[7] In most of our inevitable discovery precedent, the imminent and inevitable lawful discovery of the evidence has been so closely tied to the ongoing investigation its occurrence has been practically certain. *See, e.g., United States v. Kozak*, 12 M.J. 389, 393 (C.M.A. 1982) (holding the unlawful search of a locker yielded the same evidence agents would have lawfully recovered moments later conducting a search incident to arrest); *Owens*, 51 M.J. at 204 (holding an officer's proper automobile search meant he would have inevitably discovered evidence within the car, despite other unconstitutional behavior). These cases differ from the one at present, where we believe the officers could have and would have obtained a lawful, valid warrant had they known they were prohibited from searching Appellant's bags.

the agents arrived at Appellant's office and noticed the personal bags, read the authorization, noticed the discrepancy, and decided not to search the bags, they could have, and likely would have lawfully seized the bags, with probable cause to do so, and either called a military magistrate and asked for an oral search authorization or left and obtained a written authorization to search the bags. *See California v. Acevedo*, 500 U.S. 565, 575 (1991) ("Law enforcement officers may seize a container and hold it until they obtain a search warrant. Since the police, by hypothesis, have probable cause to seize the property, we can assume that a warrant will be routinely forthcoming in the overwhelming majority of cases." (internal quotation marks omitted) (citations omitted)). Furthermore, it is reasonable to conclude the agents would have applied for authorization to search the bags where, as here, they had earlier requested, in the affidavit, to search any bags found.[8] The probable cause that existed to search Appellant and his vehicle would still have supported any later request to search the bags had the illegality not occurred.[9]

Second, the agents were actively pursuing leads that would have led them to the same evidence. On December 7 and 8, agents searched other bags belonging to Appellant and recovered blank prescription forms, receipts, travel orders on official letterhead, a laptop, a Blackberry, SIM cards, an iPad, medications, and documents. In mid-December, agents obtained Appellant's travel records and vouchers and reviewed his financial, insurance, and medical

---

[8] *Cf. Wicks*, 73 M.J. at 103 (holding "the inevitable discovery doctrine cannot rescue evidence obtained via an unlawful search simply because probable cause existed to obtain a warrant when the government presents *no* evidence that the police would have obtained a warrant" (internal quotation marks omitted) (citation omitted)).

[9] We do not condone the officers' failure to read and/or understand the scope of the search authorization. We caution law enforcement to carefully read search authorizations to ensure they are aware of and understand any limitations the issuing magistrate may have imposed. As we write elsewhere in this opinion, we decide this case on its unique and narrow circumstances.

records. This yielded evidence Appellant had committed both travel and medical prescription fraud and spurred an investigation into whether Appellant committed insurance fraud. On February 5, 2013, aside from the evidence contained in the personal bags at Appellant's office, agents recovered jewelry invoices, pharmacy receipts, leave authorizations, bank statements, a permanent duty travel voucher, and documents evidencing fraud against the United States during searches of Appellant's vehicle, his office, and his residence. Under the preponderance of the evidence standard, the Government has demonstrated agents were actively pursuing leads that support the conclusion that the bags at the Chapel 1 office would inevitably have been lawfully seized and searched and their contents discovered.

Next, we also see no valid policy reason for applying the exclusionary rule in this case. "[A]dmittedly drastic and socially costly," the exclusionary rule should only be applied where "needed to deter police from violations of constitutional and statutory protections." *Nix*, 467 U.S. at 442–43. The exclusionary "rule's sole purpose … is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). As such, its use is limited "to situations in which this purpose is thought most efficaciously served." *Id.* at 237 (internal quotation marks omitted) (citation omitted). "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh [the rule's] heavy costs." *Id.*

Finally, the inevitable discovery exception to the exclusionary rule unavoidably requires acceptance of certain reasonable assumptions. Reasonable minds might very well differ as to whether, in a particular case, these assumptions have exceeded the bounds of reasonableness. Nonetheless, the aim is to apply the doctrine in such a way as to not subvert the deterrence objective of the exclusionary rule. Here, where the Fourth Amendment violation was likely not the result of deliberate misconduct in need of deterrence, any marginal deterrent benefit to be gained is far outweighed by the heavy costs exclusion would have— namely placing the Government in a worse position than it would have been had the illegality not occurred. *See, e.g.,*

*Sims*, 553 F.3d at 581, 583–84 (noting likely scrivener's error of omission on warrant of evidence listed in affidavit and that there was zero social benefit in excluding the evidence because "[t]he search would have been authorized, would have taken place, and would have been identical in scope, both as to places searched and things seized, to the search that the police did conduct").

We therefore conclude the inevitable discovery doctrine applies to the narrow circumstances before us in this case.

### III. Conclusion

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judge RYAN, concurring in part and concurring in the result.

I join fully in the majority decision that there was probable cause to issue the December 7, 2012, warrant to search Appellant's home. With respect to the Court's resolution of the search of Appellant's bags on February 5, 2013, I respectfully concur in the result. To my mind, the better way to resolve that issue[1] is to ask whether, viewing the evidence in the light most favorable to the party who prevailed below, *United States v. Keefauver*, 74 M.J. 230, 233 (C.A.A.F. 2015), the military judge abused his discretion in denying the motion to suppress the evidence from that search. *Id.* That decision, in turn, depends on whether he was wrong to determine that law enforcement's commonsense, non-hypertechnical interpretation of the warrant's scope was reasonable. That is a factual thumb on the scale in the Government's favor, on top of two layers of deferential review. Under the facts of this case, I therefore conclude that the military judge did not abuse his discretion in denying the motion to suppress evidence found inside bags in Appellant's immediate vicinity, as the military magistrate's search authorization could reasonably be read to include a search of Appellant's bags.

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. amend. IV. It is axiomatic that a warrantless search and seizure is "presumptively unreasonable," *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)); *United States v. Gurczynski*, 76 M.J. 381, 386 (C.A.A.F. 2017), and that a search conducted pursuant to a valid warrant is presumptively reasonable. *Gurczynski*, 76 M.J. at 386; *United States v. Wicks*, 73 M.J. 93, 99 (C.A.A.F. 2014). The Fourth Amendment, in turn, requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and

---

[1] It simply cannot be the case, as the majority suggests, that inevitable discovery pertains wherever law enforcement would have obtained a different warrant to search if they knew the search they were conducting was not covered by the warrant in hand. *United States v. Eppes*, __ M.J. __, __ (12–15) (C.A.A.F. 2018).

particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

In this case there is a warrant and, with respect to the February 5 search, no one argues either that probable cause was lacking to search Appellant's bags or that the things seized as a result of that search were outside the scope of the warrant. Appellant argues instead that law enforcement exceeded the scope of the warrant to search his person by searching the bags in his immediate vicinity at the time of the search. Brief for Appellant at 10–11, *United States v. Eppes*, No. 17-0364 (C.A.A.F. Jul. 12, 2017) (citations omitted). The military judge simply did not abuse his discretion in coming to the contrary conclusion as his decision was not outside the "range of choices reasonably arising from the applicable facts and the law." *United States v. Irizarry*, 72 M.J. 100, 103 (C.A.A.F. 2013) (quoting *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008)).[2]

The affidavit accompanying the warrant requested search authorization "for a search of EPPES' person, his personal belongings that may be located within a reasonable vicinity of EPPES' person or as may be found at his work location located in Chapel 1, and his vehicle." The warrant itself authorized a search of the "person of . . . EPPES," "premises known as" his vehicle, and the seizure of "[d]ocuments and/or items of evidence as may be used in the commission of fraud against the United States Government or against federally insured financial institutions; watches and jewelry matching the description of items claimed lost or stolen in insurance claims against USAA and commercial airline companies."

In his ruling on the defense motion to suppress the evidence found in the "closet-sized office" in Eppes's immediate

---

[2] The validity of the warrant is precisely why the good-faith exception to the exclusionary rule, *United States v. Leon*, 468 U.S. 897, 920–21 (1984), does not apply to this case. There is nothing to suggest that the warrant itself was constitutionally invalid or defective, and the good-faith exception will not "save an improperly executed warrant." *United States v. Angelos*, 433 F.3d 738, 746 (10th Cir. 2006) (quoting *United States v. Rowland*, 145 F.3d 1194, 1208 n. 10 (10th Cir. 1998)).

vicinity, the military judge concluded, inter alia, that "the agents were authorized to search the person of Capt Eppes and reasonably searched the area immediately around him." Utilizing a commonsense rather than a hypertechnical review of the warrant, *United States v. Srivastava*, 540 F.3d 277, 289–90 (4th Cir. 2008); *United States v. Stiver*, 9 F.3d 298, 302–03 (3d Cir. 1993), *cert. denied*, 510 U.S. 1136 (1994); *United States v. Marques*, 600 F.2d 742, 751–52 (9th Cir. 1979); *United States v. Salameh*, 54 F. Supp. 2d 236, 277–78 (S.D.N.Y. 1999), law enforcement could reasonably conclude that the "person" mentioned in the warrant included bags in close proximity to the "person." There is nothing constitutionally unreasonable about that conclusion. *Gurczynski*, 76 M.J. at 386 ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011))); *cf. Groh*, 540 U.S. at 572–80 (Thomas, J., dissenting).

First, there is no evidence that the warrant failed to include the apparently talismanic words "his personal belongings that may be located within a reasonable vicinity of EPPES' person" because the magistrate believed there was no probable cause to believe the evidence he authorized to be seized would be found in his personal bags. Indeed, such evidence as there is suggests that the same person who provided the affidavit in support of the warrant also filled out the warrant's form, supporting the opposite conclusion: that both the affiant and the magistrate believed the "person" of EPPES included within in its scope the subordinate clause "his personal belongings that may be located within a reasonable vicinity of EPPES' person." This interpretation of the facts is all the more reasonable given that the list of items to be seized included documents and numerous watches, which are unlikely to be found in someone's pockets. *United States v. Graham*, 638 F.2d 1111, 1112–14 (7th Cir. 1981).

Second, it is folly to forget that in executing a warrant law enforcement is required to exercise judgment, making commonsense, rather than hypertechnical, determinations about the scope of their authority, while precluded from "general rummaging about." *Gurczynski*, 76 M.J. at 386; *Stanford v. Texas*, 379 U.S. 476, 485 (1965)); *United States v.*

*Fogg*, 52 M.J. 144, 148 (C.A.A.F. 1999). Of course, this ability to exercise discretion does not give law enforcement a "blank check," *Hessel v. O'Hearn*, 977 F.2d 299, 302 (7th Cir. 1992), and "[f]lagrant disregard for the terms of the warrant" is forbidden. *Id*. But law enforcement's reasonable interpretation of a warrant's terms should be respected. *See, e.g., id*. (Law enforcement is "not obliged to interpret [warrants] narrowly, and would . . . be mistaken to do so . . . ."); *Srivastava*, 540 F.3d at 289–90 (holding that personal tax documents were included in a commonsense understanding of a warrant authorizing the seizure of documents of a pass-through tax entity); *Stiver*, 9 F.3d at 302–03 (holding that officers had a reasonable basis to answer accused's telephone when executing a warrant for "drug paraphernalia," because the telephone could be considered "paraphernalia")*;* *Marques*, 600 F.2d at 751–52 (holding that a science textbook including a methamphetamine recipe was reasonably within the scope of a warrant authorizing the seizure of narcotics and narcotic paraphernalia when the affidavit in the warrant application makes clear that the police expected to find evidence of methamphetamine production); *Salameh*, 54 F. Supp. 2d at 277–78 (emphasizing that law enforcement interpretation of search warrants should be "commonsensical" not "hyper-technical" (quoting *Johnson v. Massey*, No. 3:92 CV 178 (JAC), 1993 U.S. Dist. LEXIS 13100, at *13, 1993 WL 372263, at *4 (D. Conn. Sept. 17, 1993))).

There was no rummaging about here, and it was constitutionally reasonable for the law enforcement officers to conclude that a search of the Appellant's person referred to more than the literal person of the Appellant and reasonably included bags in his immediate vicinity. Humans are not kangaroos, and the human body thus does not have natural "pockets" or "pouches" in which to store either watch and jewelry collections or documents related to insurance and travel fraud. *Graham*, 638 F.2d at 1112–14. "To hold differently would be to narrow the scope of a search of one's person to a point at which it would have little meaning." *Id*. at 1114.

Senior Judge EFFRON, concurring in part and dissenting in part.

I agree with the conclusion in the majority opinion that the military judge properly denied the defense motion to suppress the evidence seized in the December 7, 2012, search of Appellant's residence. I also agree with the majority opinion's determination that the military judge erred in rejecting the defense contention that the February 5, 2013, search of Appellant's bags exceeded the scope of the search authorization.

I respectfully disagree with the majority opinion's conclusion that all of the evidence seized in the February 5 search was nonetheless admissible under the inevitable discovery doctrine. Although the record identifies the information contained in some of the items obtained on February 5 and provides a basis for concluding that those items inevitably would have been discovered, the Government failed to establish in the record a basis for relying on the inevitable discovery doctrine with respect to other items at issue. The Government did not identify the contents of those other items, nor did the Government set forth in the record a path that inevitably would have led to the discovery of the unidentified contents of those other items.

*The Scrivener*

As an initial matter, the majority opinion suggests a "scrivener's error" is to blame for the omission of authorization to search Appellant's bags. The Government had the opportunity at trial to present evidence in support of this theory, but did not do so. Special Agent WC, who prepared the affidavit and conducted the search, testified at the suppression hearing. The trial counsel's questions did not ask Special Agent WC about whether or why he thought he was authorized to search the bags despite their omission from the authorization. The issuing magistrate did not testify, and the Government did not present an affidavit from the magistrate to support the theory of a scrivener's error. Notwithstanding the opportunity to do so, the Government did not establish in the record the magistrate's intent to exclude or include the bags.

If the Government believed the content of the search authorization was affected by a scrivener's error, that matter should have been litigated at trial, where the factual basis could have been tested by testimony, addressed through argument of the parties, and ruled upon by the military judge. At this point in the appellate proceedings, it is no longer appropriate to rely on speculation about a scrivener's error — a consideration that was not raised or preserved at trial.

*Inevitable discovery — the Government's Burden and an Incomplete Record*

Where evidence is obtained in an illegal search, such as the February 5 search that exceeded the scope of the authorization, the government bears the burden of demonstrating by a preponderance of the evidence that, at the time of the illegal search, agents were pursuing leads that would have led inevitably to the discovery by lawful means of the unlawfully obtained evidence. *Nix v. Williams*, 467 U.S. 431 (1984); *United States v. Wicks*, 73 M.J. 93, 103 (C.A.A.F. 2014). " 'Mere speculation and conjecture' as to the inevitable discovery of the evidence is not sufficient when applying this exception." *Wicks*, 73 M.J. at 103 (quoting *United States v. Maxwell*, 45 M.J. 406, 422 (C.A.A.F. 1996)).

At trial, Appellant moved to suppress the evidence found in searches and seizures conducted on at least eight different dates, including the evidence found in Appellant's bags on February 5. The Government opposed the motion, arguing the searches and seizures were lawful, and even if they were not, "law enforcement obtained an overwhelming amount of evidence of the Accused's criminal activity through his own actions of submitting travel vouchers and insurance claims and compared his proffered substantiating documents against official records obtained from individual organizations through *subpoenas duces tecum*."

The Government did not introduce into evidence the items found in Appellant's bags, nor did the Government attempt to show that any piece of that evidence inevitably would have been discovered by other means. Instead, the Government at trial simply argued that, as a general matter, "the evidence seized during this search made no

substantial impact on the investigation" in light of the "broader criminal investigation," which yielded evidence of travel and insurance fraud.

The military judge found that all the searches were lawful, and even if not lawful, "a preponderance of the evidence demonstrates that AFOSI possessed and were actively pursuing evidence and leads independent of the searches and seizures at issue in this motion." Reviewing the evidence discovered in all of the searches at issue, the military judge found that AFOSI inevitably would have found a first group of items — fraudulent travel vouchers, government travel card records, an investigation file into theft, unfunded purchase requests, financial database information, Appellant's USAA claim, a fraudulent vehicle claim, and Appellant's bank records.

The military judge made no findings with respect to a second group of items found in Appellant's bags, including the merchandise inventory sheet, the Cole Haan receipt, the ATM card, or the Foundry Loft envelope or the four documents inside it. The Government made no offer of proof or argument as to the manner in which the Government's investigatory efforts would have led the investigators to the second group of items, the contents of which were never described in the record by the Government or in the findings of the military judge.

We review the military judge's ruling on a motion to suppress for abuse of discretion. *United States v. Nieto*, 76 M.J. 101, 105 (C.A.A.F. 2017). The military judge's findings of fact are entitled to deference and will be reversed only if clearly erroneous.

With respect to the first group of items, the record contains evidence as to the content and the investigatory steps then underway regarding those items. I agree with the majority opinion that evidence from the first group of items was admissible under the inevitable discovery doctrine.

With respect to the second group of items, the Government introduced no evidence as to the content; and the military judge made no specific findings that the items in the second group inevitably would have been discovered.

In that context the military judge's conclusion as to inevitable discovery is entitled to no deference.

Viewing the evidence in the light most favorable to the Government, we can do no more than speculate as to what, precisely, was found in Appellant's bags, as the Government did not produce the evidence or describe it with particularity. Without more information as to what was found in the bags — e.g., what was on the merchandise inventory list?; what documents were contained in the Foundry Lofts envelope?; did the Cole Haan receipt record a financial transaction that would have been discovered in Appellant's bank or credit card records? — we cannot conclude that the evidence inevitably would have been discovered by other means.

*Harmlessness*

With respect to harmlessness, Appellant entered a conditional guilty plea, preserving his right to challenge the military judge's ruling on the motion to suppress. The Government could have, but did not, present information via the plea agreement stipulation or otherwise on the record about the contents of the evidence in the second group of items contained in the bags or other information that could have been reviewed during appellate consideration of the issue.

In this context, where the Government relied on the plea to meet its burden of proof, we cannot evaluate how the evidence of the second group of items found in Appellant's bags affected his decision to plead guilty. *See United States v. Shelton*, 64 M.J. 32, 39 (C.A.A.F. 2006) (although this Court ordinarily reviews an erroneous evidentiary ruling for harmlessness, "that avenue of analysis is not presently open because of the context of this error in the trial proceedings"). Indeed, the military judge acknowledged that he could not conclusively determine how suppression of the evidence would have affected the case, but opined that "it would have impacted the ability of the government to present its case and to meet its burden beyond a reasonable doubt" for at least some of the charges and specifications.

In this case, the Government did not to meet its burden on the issue of inevitable discovery. The Government did not offer into evidence the specific items found in the bags, did not otherwise identify the contents of the second group of items found in the bags, and did not identify leads that law enforcement possessed or was actively pursuing that would have led to the discovery of the second group of items. Without more information as to what was found in the bags, the record does not establish that (1) the evidence inevitably would have been discovered by other means, or (2) the illegal search was harmless beyond a reasonable doubt.

In the context of a conditional guilty plea, the Government has not demonstrated that the erroneous denial of the motion to suppress was harmless beyond a reasonable doubt. Under these circumstances, the decision of the United States Army Court of Criminal Appeals should be reversed, and a rehearing should be authorized.